**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Steven G. Madison (SBN: 101006)
  stevemadison@quinnemanuel.com
Robert M. Schwartz (SBN: 117166)
  robertschwartz@quinnemanuel.com
Marie M. Hayrapetian (SBN: 315797)
  mariehayrapetian@quinnemanuel.com
Julian T. Schoen (SBN: 344202)
  julianschoen@quinnemanuel.com
Arian J. Koochesfahani (*pro hac vice forthcoming*)
  ariankoochesfahani@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendants Unilever PLC,*
*The Magnum Ice Cream Company N.V.,*
*and Jochanan Senf*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANURADHA MITTAL,<br><br>        Plaintiff,<br><br>    vs.<br><br>UNILEVER PLC, THE MAGNUM ICE CREAM COMPANY N.V., and JOCHANAN SENF,<br><br>        Defendants. | Case No. 26-cv-02660-WHO<br><br>**DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>Judge:        Hon. William H. Orrick<br>Hearing Date:  September 30, 2026<br>Hearing Time:  2:00 p.m.<br>Courtroom:    2, 17th Floor |

Case No.  3:26-cv-02660-WHO
DEFENDANTS' MOTION TO TRANSFER VENUE

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED.................................................................................1

PRELIMINARY STATEMENT .......................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND........................................................................2

      A.     The Parties.................................................................................................................2

      B.     The Ongoing Corporate Governance Dispute ...........................................................2

      C.     The SDNY Case .........................................................................................................6

ARGUMENT ....................................................................................................................................7

I.     THIS CASE SHOULD BE TRANSFERRED TO NEW YORK .........................................7

      A.     Multiple Forum-Selection Clauses Require Litigation In New York ........................7

      B.     Plaintiff Mittal Cannot Show That Public Interest Overwhelmingly Disfavors A Transfer ................................................................................................9

CONCLUSION ...............................................................................................................................10

## TABLE OF AUTHORITIES

**Page**

### Cases

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   571 U.S. 49 (2013) ....................................................................................................... 7, 8, 9

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ................................................................................................ 9

*Corn v. Kohl's Corp.*,
   2025 WL 1785943 (N.D. Cal. June 9, 2025) ........................................................................ 9

*Cung Le v. Zuffa, LLC*,
   108 F. Supp. 3d 768 (N.D. Cal. 2015) ................................................................................... 9

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ................................................................................................. 7

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) ................................................................................................. 8

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) ................................................................................................. 9

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................................................... 9

*PMC Tech. Sales, Inc. v. Cinch Connectors, Inc.*,
   2015 WL 13918263 (C.D. Cal. Nov. 17, 2015) .................................................................. 10

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) ..................................................................................... 7, 8, 10

### Statutes

28 U.S.C. § 1404(a) ..................................................................................................................... 1, 7

**NOTICE IS HEREBY GIVEN THAT** on September 30, 2026 at 2 p.m., or as soon thereafter as the matter may be heard, Defendants Unilever PLC ("Unilever"), The Magnum Ice Cream Company N.V. ("TMICC"), and Jochanan Senf will move the Court for an order transferring this case to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).

### STATEMENT OF ISSUES TO BE DECIDED

Whether, should the Court deny Defendants' motions to dismiss the first amended complaint ("FAC"), the Court should transfer this case to the United States District Court for the Southern District of New York where Plaintiff Mittal is pursuing a related lawsuit against Unilever and TMICC arising out of the same nucleus of facts, pursuant to forum selection provisions to which Plaintiff Mittal and Defendants agreed in binding written contracts.

### PRELIMINARY STATEMENT

As explained in Defendants' concurrently filed motions to dismiss, this Court lacks personal jurisdiction over Defendants, and Plaintiff Mittal's claims fail as a matter of law and under California's Anti-SLAPP statute, Code of Civil Procedure § 425.16. By the instant motion, Defendants Unilever, TMICC and Mr. Senf move in the further alternative under 28 U.S.C. § 1404(a) to transfer the case to the United States District Court for the Southern District of New York ("SDNY").[1]

As shown in detail below, transfer is mandated by applicable law. Written agreements containing forum-selection clauses bind Plaintiff Mittal and require that any related litigation be brought in the SDNY. Specifically, in a 2022 Settlement Agreement and 2000 Merger Agreement, Plaintiff Mittal agreed to bring suits "related" to those agreements in New York only. Plaintiff Mittal effectively admits that the allegations she makes in this action relate to those agreements, as

---

[1]   Unilever, TMICC and Mr. Senf are filing contemporaneously herewith motions to dismiss the FAC for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and California's Anti-SLAPP statute, and for lack of personal jurisdiction. Counsel for the parties met and conferred on August 4, 2026 regarding all these motions. Plaintiff Mittal's counsel did not agree to dismiss any claims or Defendant herein.

well as to the action filed in SDNY: in her first-filed suit in SDNY, she claims that Defendants breached those agreements and defamed her based on the same facts at issue here.

Plaintiff Mittal cannot meet her burden of showing that the public interest overwhelmingly disfavors a transfer so as to justify not enforcing the parties' choice of forum—especially given that she and the other former Class I directors already filed the related lawsuit in SDNY putting at issue many of the same disputed factual and legal issues. The public interest sharply favors transfer here in light of the substantial overlap in contested issues, the risk of inconsistent rulings, and an otherwise lack of judicial economy.

<strong><u>FACTUAL AND PROCEDURAL BACKGROUND</u></strong>

**A.      The Parties**

Unilever is a UK public limited company headquartered in London, England. *See* First Amended Complaint ("FAC") at p. 3 (¶ 2). TMICC, referred to in the FAC as "Magnum," is a Netherlands public limited company headquartered in Amsterdam. *Id.* at p. 3 (¶ 3). Mr. Senf is a citizen of the Netherlands and the CEO of Ben & Jerry's. *Id.* at p. 3, 13 (¶¶ 4, 46).

Plaintiff Mittal is a public figure known for her outspoken views mainly on issues salient to the Middle East, her opposition to Israel, and her support for Palestinian causes. *Id.* at pp. 3-4, 6 (¶¶ 10-12, 19). She lives in Oakland, California. *Id.* at p. 2 (¶ 1). In 2004, she founded the Oakland Institute ("OI)", a California non-profit that describes itself as an "independent policy think tank." *Id.* at p. 3 (¶ 10). Plaintiff Mittal serves as its Executive Director. *Id.*

**B.      The Ongoing Corporate Governance Dispute**

In 2000, Unilever acquired Ben & Jerry's. *Id.* at p. 5 (¶¶ 16-17). As part of the acquisition, Unilever agreed to establish a special purpose board of directors, comprised of a majority of "Class I" "independent directors" (persons not employed at Ben & Jerry's or Unilever) plus the CEO and a Class "U" Director, both appointed by Unilever (the "Board"). Importantly, the Board is not a traditional company board that has oversight for everything the business does. Here, the Board's remit is limited to primary responsibility for Ben & Jerry's "social mission and brand integrity." *Id.* at p. 5 (¶ 17).

As part of its acquisition, Unilever also agreed to fund the Foundation, an entity separate from Ben & Jerry's and run by its own board of trustees. *Id*. at p. 4 (¶ 14). Unilever was the Foundation's sole source of funding. Unilever agreed to annually donate a percentage of Ben & Jerry's profits, and a minimum of $5 million for the first 10 years. *Id*.

Plaintiff Mittal became a Class I director in 2008. *Id.* at p. 4 (¶ 13). In 2012, she became a trustee of the Foundation. *Id.* at p. 4 (¶ 14). And she became the Ben & Jerry's Board chair in 2018. *Id.* at p. 5 (¶ 18).

In March 2024, Unilever announced plans to reorganize its numerous ice cream companies (including Ben & Jerry's) as subsidiaries of TMICC. *Id.* at p. 7 (¶ 24). In preparation for the reorganization, TMICC conducted audits "across the entirety of the Magnum organizations" so that TMICC could report to its shareholders (and the SEC) about its business, risk factors and governance practices. *Id.* at p. 10 (¶ 32). With the Foundation's approval, TMICC hired "big four" firm EY (formerly Ernst & Young) to audit the Foundation. *Id.* at p. 10 (¶ 33).

During the period at issue, several Foundation trustees, including Plaintiff Mittal, directed donations to organizations with which they were affiliated, including to Plaintiff Mittal's OI. Plaintiff Mittal also issued trustee-directed grants to controversial organizations that Unilever had rejected, as Unilever had the right to do under the governing agreements. Plaintiff Mittal did so even after she and the other independent directors on the Ben & Jerry's board had lost an arbitration that challenged Unilever's discretionary right to veto grants to at least two of those organizations.

Plaintiff Mittal refused to cooperate with the audit. The auditors gave her multiple opportunities to participate in interviews related to the discretionary grant-making process and respond to questions surrounding discretionary grants made at her request. But Plaintiff Mittal said that she would answer questions only if put to her in writing. *Id.* at pp. 29-30 (¶¶ 95-96). By then she had retained an attorney—the same attorney who was representing her and the other former Class I directors in the pending lawsuit against Unilever in SDNY. The auditors wanted her unprompted answers, not answers written by her litigators.

In September 2025, the Skadden law firm informed Plaintiff Mittal that Skadden had been retained to conduct a Business Integrity ("BI") investigation "into certain matters relating to [her]

role as director" on the Board. *Id.* at pp. 11-12 (¶ 40). Skadden asked Plaintiff Mittal to sit for an interview. Again, she refused. *See id.* at pp. 29-30 (¶¶ 95-96). Even worse, she prevented others from complying: "Mittal, through her counsel, made clear that neither she nor any Class I Directors or Foundation Trustees would agree to be interviewed for the investigation." *Id.* (Ex. C at 5).

Under the Ben & Jerry's governance agreements, Class I board members sit in judgment of, and may remove, one another. At the conclusion of the BI investigation, TMICC attempted to share the findings with those other Class I directors at an October 23, 2025 meeting. But they "refused to engage without their outside litigation counsel present," and their lawyer "insisted on recording the meeting where confidential and sensitive information was to be shared." *Id.* (Ex. C at 6). On October 23, 2025, TMICC sent a letter to those Class I directors that summarized the investigation's findings and asked them to advise TMICC how they planned to address the issues raised. *See id.* at 13-16 (¶ 47 & Ex. C (the "October 23 Letter")). Neither the October 23 Letter nor the BI investigation's details were shared with the public or with anyone outside of Unilever or TMICC (or even within Unilever or TMICC who lacked a need to know), by Unilever, TMICC or Mr. Senf. Instead, it was Plaintiff Mittal who first made the October 23 Letter's contents public when she cut and pasted portions of the letter into her original complaint (*see* Dkt. 1 at pp. 13-15 (¶ 44)), and later attached it as an exhibit, (*see* FAC (Ex. C)). The October 23, 2025 letter provided seven independent categories of misconduct by Plaintiff Mittal:

1.  "Ms. Mittal improperly benefits from B&J Foundation funds." This finding concerned the direct and indirect payments from the Foundation to her organization. FAC (Ex. C at 2).

2.  "Ms. Mittal circumvented Unilever's refusal to donate to certain organizations." This finding concerned donations she caused the Foundation to make to controversial organizations after Unilever rejected them, which it had the right to do, and after Plaintiff Mittal lost a legal challenge to Unilever's decisions. The donations "placed Unilever and B&J at legal risk of state anti-boycott laws," which breached Plaintiff Mittal's fiduciary duties. *Id*. at 3-4. Plaintiff Mittal's failure to disclose Unilever's prior objections and the arbitrator's ratification of those objections to the Foundation

prior to such grants having been made put the Foundation's ongoing funding from Unilever and TMICC at risk, in further breach of her fiduciary duties to both Ben & Jerry's and the Foundation.

3. "Ms. Mittal's behavior towards employees and fellow Board members created a toxic working environment."  This finding concerned Plaintiff Mittal's offensive and inappropriate workplace behavior to both employees and Board members in violation of the company's Respect, Dignity and Fair Treatment policy.  *Id.* at 4.

4. "Ms. Mittal's actions have substantially interfered with both Unilever and B&J businesses." This finding concerned Plaintiff Mittal's breach of the 2000 acquisition agreements by refusing to stay within the specific areas of responsibility delegated to the Board.  She inserted herself in business decisions that were the responsibility of the CEO including product development, overruled justified decisions, and wasted company resources.  *Id.* at 4-5.

5. "Ms. Mittal allowed the disclosure of confidential business information."  This finding concerned Plaintiff Mittal's improper public disclosure of a confidential performance review of the former Ben & Jerry's CEO, without his or the company's consent and in breach of the company's privacy policy.  *Id.* at 5.

6. "Ms. Mittal failed to cooperate in the Investigation and the Foundation Audit."  This finding concerned her refusal to be interviewed and her demand that she be given any questions in writing so that she could draft her responses with the aid of her lawyer.

7. "Ms. Mittal initiated a Business Integrity complaint to further her own personal interests at the expense of the Foundation, Unilever, and B&J."  This finding concerned her retaliation against members of the legal department involved in the governance audit and BI investigation by commencing a baseless and bad-faith BI investigation against them.  *Id.* at 6.

The FAC alleges that, on October 28 or 29, 2025, during the board's meeting in Burlington, Vermont, Ben & Jerry's CEO Jochanan Senf allegedly read a "summary" of the October 23 letter

DEFENDANTS' MOTION TO TRANSFER VENUE

to the Board, including Plaintiff Mittal—no press or non-employees were present. *Id.* at p. 16 (¶¶ 50-51).[2] The FAC also alleges that statements related to the findings in the EY audit and the Skadden BI investigation that were made in the press and in SEC filings defamed her and caused her emotional distress. *Id.* at pp. 25-26, 32-33 (¶¶ 81, 106).

Plaintiff Mittal filed the instant lawsuit on March 26, 2026 (Dkt. 1) and filed the FAC on May 8, 2026 (Dkt. 24), at which time she added Mr. Senf as a defendant.

**C.    The SDNY Case**

As noted above, the case at bar is not the only pending lawsuit that Plaintiff Mittal has filed in this long-running Ben & Jerry's corporate governance dispute. In 2024, Plaintiff Mittal and other now-former Class I board members filed suit against Unilever (and later also against TMICC through an amended complaint) in SDNY in[3] *Ben & Jerry's Homemade, Inc. v. Unilever PLC*, No. 1:24-cv-08641-PKC (S.D.N.Y. Apr. 4, 2025), Dkt. No. 110 (Fourth Amended Complaint ("SDNY Complaint")) ("the SDNY Case"), attached as Exhibit 28 to Defendants' Request For Judicial Notice filed concurrently herewith ("RJN"). Plaintiff Mittal alleges there that Unilever and TMICC breached two agreements: the 2000 Merger Agreement whereby Unilever acquired Ben & Jerry's and a 2022 Settlement Agreement that resolved a prior dispute between the former Class I Directors and Unilever regarding Ben & Jerry's social mission and Palestine. SDNY Complaint at pp. 8, 23, 46 (¶¶ 24, 63, 124). Both agreements contain forum-selection clauses that specify New York as the sole forum for litigating disputes "relating to" the agreements. *See* Ex. 29 to RJN (2022 Settlement Agreement at p. 5, § 14); Ex. 30 to RJN (2000 Merger Agreement at p. 65, § 9.10).

According to Plaintiff Mittal's allegations in the SDNY Case, Unilever and TMICC breached these agreements when they engaged in the same conduct at issue here—namely,

---

[2] Mr. Senf denies these allegations. When he sought to speak to the Board at this meeting, Plaintiff Mittal, as chair, refused to allow him to be heard. That factual dispute is immaterial to this motion.

[3] The SDNY Case was filed in November 2024. FAC at p. 7 (¶ 23). As then-Board Chair, Plaintiff Mittal and the other individual SDNY plaintiffs sued in the name of Ben & Jerry's, but when a motion to dismiss was filed raising the former Class I Directors' lack of standing to sue in the name of the company, Plaintiff Mittal and the other directors filed a First Amended Complaint on behalf of "The Independent Directors of Ben & Jerry's." *Ben & Jerry's Homemade, Inc. v. Unilever PLC*, No. 1:24-cv-08641-PKC (S.D.N.Y. Apr. 4, 2025), Dkt. No. 32.

"[l]aunching and continuing [a] removal scheme, including a pretextual audit of the Foundation and sham Business Integrity Investigation of Chair Mittal."  SDNY Complaint at pp. 48, 55 (¶¶ 132, 163).  In support of that allegation, Plaintiff Mittal tells much the same story that she tells here.  She recounts her role on the Board, her disagreements with Unilever, and the supposed plan to oust her (*id.* at pp. 9-11, 24-32 (¶¶ 26-30, 66-98)); impugns EY's audit and Skadden's Business Integrity investigation (*id.* at pp. 28-37 (¶¶ 83-109)); claims the October 23, 2025 letter, the subsequent SEC filing, and the December 3, 2025 prospectus contain false and defamatory statements about her (*id.* at pp. 34-37 (¶¶ 103, 106, 108)); complains about being relieved of her board seat as a result of the audit and investigation, and seeks reinstatement as a remedy (*id.* at 39-40, 63 (¶¶ 117, 118, 198)).

<u>ARGUMENT</u>

I.      THIS CASE SHOULD BE TRANSFERRED TO NEW YORK

A.      Multiple Forum-Selection Clauses Require Litigation In New York

Under 28 U.S.C. § 1404(a), "[a]s a general rule, '[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.'"  *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013)).  "[T]he plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed."  *Id.* (citation and quotation omitted).  "Only under extraordinary circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied."  *Id.* at 1088 (citation modified).

Where, as here, a forum-selection clause applies, Plaintiff bears the "heavy burden" of showing that a transfer would gravely harm the public interest.  *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1084, 1087 (9th Cir. 2018).  The "trial court must draw all reasonable inferences in favor of the nonmoving party."  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 455 (9th Cir. 2007).  But "the pleadings need not be accepted as true, and the court may consider facts outside the pleadings," including the contracts that contain the forum-selection clauses.  *Id.*

DEFENDANTS' MOTION TO TRANSFER VENUE

Substantively, federal law controls the interpretation of a forum-selection clause and the weighing of the public interest. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 58 (2013); *Yei A. Sun*, 901 F.3d at 1086 ("We apply federal contract law to interpret the scope of a forum-selection clause even in diversity actions, such as this one." (citations omitted)). The decision to transfer is entrusted to the District Court's discretion. *Yei A. Sun*, 901 F.3d at 1086; *Lou v. Belzberg*, 834 F.2d 730, 734, 739 (9th Cir. 1987).

Several forum-selection clauses require Plaintiff Mittal's suit to be brought in New York:

***First***, under a 2022 settlement agreement between Unilever and the Ben & Jerry's Class I board members, Plaintiff Mittal agreed that she "will not bring any action relating to the settlement agreement in any court other than a court sitting in the State of New York." Ex. 29 to RJN (2022 Settlement Agreement at p. 5, § 14). Under Ninth Circuit law, this action "relates to" to the settlement agreement. *See Yei A. Sun*, 901 F.3d at 1086. In contrast to "forum-selection clauses covering disputes 'arising out of' a particular agreement," which "apply only to disputes relating to the interpretation and performance of the contract itself," "forum-selection clauses covering disputes *'relating to'* a particular agreement apply to *any* disputes that reference the agreement or have some logical or causal connection to the agreement." *Id.* (emphases added) (citation and quotation omitted).

This action logically connects to the 2022 Settlement Agreement. Section 2(b) of that agreement imposes a requirement to "[r]espect and acknowledge the Ben & Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity and agree to work in good faith with the Independent Board to ensure that both are protected and furthered." Here, Plaintiff Mittal alleges that Defendants defamed her as part of a bad-faith attempt to undermine the Class I Directors and dictate Ben & Jerry's Social Mission. Plaintiff Mittal's parallel action in New York confirms this. In her New York complaint, Plaintiff Mittal alleges that Unilever and Magnum breached section 2(b) of the 2022 Settlement Agreement by "[l]aunching and continuing its removal scheme, including the pretextual audit of the Foundation and sham Business Integrity Investigation of Chair Mittal." SDNY Complaint at pp. 55-56 (¶ 163(i)). Thus, Plaintiff Mittal cannot deny, and indeed, implicitly admits the existence of a logical connection, if not also a

causal connection, between this action and the 2022 Settlement Agreement, as the conduct at issue here supposedly violates that agreement.

**Second**, the 2000 Merger Agreement also provides that actions "relating to any Transaction Agreement or any Transaction" must be brought in "New York state court or any Federal court sitting in the State of New York[.]"  Ex. 30 to RJN (2000 Merger Agreement at p. 65, § 9.10).  This action relates to "any Transaction Agreement or Transaction" under the 2000 Merger Agreement because it logically connects to "key" parts of the Merger—namely, the creation of the Board and the Board's governing terms.  FAC at p. 2 (¶ 1).  Once again, the filing of Plaintiff Mittal's SDNY Case confirms this.  In her SDNY complaint, Plaintiff Mittal alleges that Unilever PLC and TMICC breached the Board's governing terms by "[l]aunching and continuing its removal scheme, including a pretextual audit of the Foundation and sham Business Integrity Investigation of Chair Mittal" (SDNY Complaint at p. 48 (¶ 132(i)))—the same conduct at issue here.

Plaintiff Mittal is bound by the 2000 Merger Agreement even though she did not sign it. "[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (citation omitted).  She has embraced the agreement by suing Unilever and TMICC for breach. As a result, she is equitably estopped from arguing that the agreement's forum-selection clause does not apply to her.  *See, e.g.*, *Corn v. Kohl's Corp.*, 2025 WL 1785943, at *1-2 (N.D. Cal. June 9, 2025) (applying forum-selection clause to non-signatory under equitable estoppel) (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014)); *see also Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 775 n.4 (N.D. Cal. 2015) ("[T]he non-signatory plaintiffs have subjected their cases to the applicable forum selection clause by choosing to join a collective action with other plaintiffs who are signatories[.]").

**B.     Plaintiff Mittal Cannot Show That Public Interest Overwhelmingly Disfavors A Transfer**

Because not one but two forum-selection clauses require this case to be transferred, Plaintiff Mittal bears an especially heavy burden "of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67.  In particular, she must make "a strong showing"

DEFENDANTS' MOTION TO TRANSFER VENUE

of "exceptional circumstances," such as that "(1) the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of his day in court." *Yei A. Sun*, 901 F.3d at 1088 (citation modified). None of these circumstances exists here. *See PMC Tech. Sales, Inc. v. Cinch Connectors, Inc.*, 2015 WL 13918263, at *4 (C.D. Cal. Nov. 17, 2015) (enforcing forum-selection clause in defamation case).

## **CONCLUSION**

Defendants respectfully request that the Court transfer the case to SDNY.


DATED: August 12, 2026                    Respectfully submitted,


By: /s/ *Steven G. Madison*___
Steven G. Madison
Robert M. Schwartz
Marie M. Hayrapetian
Julian T. Schoen
Arian J. Koochesfahani
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3096
robertschwartz@quinnemanuel.com
stevemadison@quinnemanuel.com
mariehayrapetian@quinnemanuel.com
julianschoen@quinnemanuel.com
ariankoochesfahani@quinnemanuel.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under Fed. R. Civ. P. 5(b) on this the 12th day of August 2026.

Dated:  August 12, 2026                    By: */s/ Steven G. Madison*
                                                    Steven G. Madison
                                                    *Attorney for Defendants*

Case No.  3:26-cv-02660-WHO
DEFENDANTS' MOTION TO TRANSFER VENUE