THOMAS B. HARVEY (CA Bar #287198)
**LAW OFFICES OF THOMAS B. HARVEY**
365 E. Avenida De Los Arboles, #226
Thousand Oaks, CA 91360
Telephone: (805) 768-4440
tbhlegal@proton.me

PAUL K. VICKREY (*Pro Hac Vice*)
PATRICK F. SOLON (*Pro Hac Vice*)
DYLAN M. BROWN (*Pro Hac Vice*)
**VITALE, VICKREY, NIRO, SOLON & GASEY LLP**
311 S. Wacker Drive, Suite 2200
Chicago, IL 60606
(312) 236-0733
vickrey@vvnlaw.com
solon@vvnlaw.com
dbrown@vvnlaw.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

ANURADHA MITTAL,

Plaintiff,

v.

UNILEVER PLC, THE MAGNUM ICE CREAM COMPANY N.V., and JOCHANAN SENF,

Defendants.

Case No. 26-cv-02660-WHO

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**

| | |
|---|---|
| Judge: | Hon. William H. Orrick |
| Hearing Date: | October 7, 2026 |
| Hearing Time: | 2:00 p.m. |
| Courtroom: | 2 |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 2

III. ARGUMENT .......... 3

A. Ms. Mittal is Not Bound by the Merger Agreement's Venue Clause .......... 3

B. The Agreements Do Not Encompass Independent Torts .......... 4

C. Ms. Mittal's Claims Require No Interpretation of Either Agreement .......... 7

D. Transfer Is Not Warranted .......... 8

IV. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Marine Constr. Co. v. United States Dist. Court*,
571 U.S. 49 (2013) .......... 2, 3, 9

*Ben & Jerry's Homemade, Inc. v. Unilever PLC*,
2026 U.S. Dist. LEXIS 188978 (S.D.N.Y. Aug. 21, 2026) .......... 9, 10

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) .......... 2, 3, 4

*Commodity Futures Trading Comm'n v. Savage*,
611 F.2d 270 (9th Cir. 1979) .......... 2

*CZ Servs. v. Express Scripts Holding Co.*,
No. 3:18-cv-04217-JD, 2018 U.S. Dist. LEXIS 141087 (N.D. Cal. Aug. 20, 2018) .......... 6, 7

*Gemini Techs., Inc. v. Smith & Wesson Corp.*,
931 F.3d 911 (9th Cir. 2019) .......... 3

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) .......... 9

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) .......... 1, 3, 4, 7

*Mitchell v. Twin Galaxies, LLC*,
70 Cal. App. 5th 207 (2021) .......... 5, 6

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) .......... 3, 4

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) .......... 9

*Rajagopalan v. NoteWorld, LLC*,
718 F.3d 844 (9th Cir. 2013) .......... 3

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) .......... 3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. C 13-3349 SI, 2014 U.S. Dist. LEXIS 55234, 2014 WL 1477748 (N.D. Cal. Apr. 14, 2014) .......... 7

**Statutes**

28 U.S.C. § 1404(a) ....................................................................................................2, 3, 6, 8

Lanham Act...........................................................................................................................6

## I. INTRODUCTION

Defendants Unilever PLC ("Unilever"), The Magnum Ice Cream Company N.V. ("Magnum"), and Jochanan Senf ("Senf") (collectively "Defendants") request that this Court transfer this case to the Southern District of New York based on a forum selection clause in one agreement that Ms. Mittal never signed, and in another agreement unrelated to the claims Ms. Mittal has asserted in this case. Neither agreement reaches Plaintiff's claims, and therefore they cannot support transfer of venue.

In their motion, Defendants claim that this suit "put[s] at issue many of the same disputed factual and legal issues" as the Southern District of New York ("SDNY") case, and frames both cases this way: "According to Plaintiff Mittal's allegations in the SDNY Case, Unilever and Magnum breached these agreements when they engaged in the same conduct at issue here -- namely, '[l]aunching and continuing [a] removal scheme, including a pretextual audit of the Foundation and sham Business Integrity Investigation of Chair Mittal.'" (Doc. #53 at 6-7).

This is a defamation case. Ms. Mittal alleges that Defendants published a series of false statements accusing her of, among other things, self-dealing, receiving improper benefits, diverting funds, and being deemed unfit to serve after internal investigation. (FAC ¶81). Ms. Mittal's claims depend on whether those statements were false. They do not turn on construing any provision of the Merger Agreement or the Settlement Agreement, and survive independently from the issue of whether either of those contracts was breached.

In the Ninth Circuit, the extent to which a forum selection clause may apply to tort claims "depends on whether resolution of the claims relates to interpretation of the contract." *Manetti-Farrow, Inc. v. Gucci Am.,* Inc., 858 F.2d 509, 514 (9th Cir. 1988). Because Ms. Mittal's tort claims require no such interpretation, the clauses do not apply, and transfer is therefore not mandatory. Overlapping facts do not bring these claims within the asserted clauses.

Ms. Mittal is not a party to the Merger Agreement. She did not join the Ben and Jerry's Independent Board until 2008, eight years after that agreement was executed. (Doc. #24 ¶ 13, 18). The transfer requirement Defendants invoke applies "[w]hen the parties have agreed to a valid forum-selection clause." *Atl. Marine Constr. Co. v. United States Dist. Court,* 571 U.S. 49, 62 (2013). A non-signatory may be only bound to an agreement "under ordinary contract and agency principles." *Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006). Neither equitable estoppel nor third-party-beneficiary principles apply here, because Mittal is not seeking remedies pursuant to the Merger Agreement.

Ms. Mittal is a party to the Settlement Agreement, but that venue clause is confined to "any action relating to the Settlement Agreement." (Doc. #51 ¶ 14). As addressed below, none of her claims require the interpretation of either contract. Indeed, Defendants point to no provisions of either agreement which are implicated by Ms. Mittal's claims. Further, Defendant Senf is not a party to either agreement, and Defendants make no effort to explain why jurisdiction over Senf would exist in New York but not in California.

Finally, public interest factors do not favor transfer. This case relates to a California resident's suit over reputational injury that was inflicted in California. Thus, California has a strong interest in adjudicating the suit.

## II. LEGAL STANDARD

Section 1404(a) permits transfer "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Generally, the party seeking transfer under 28 U.S.C. § 1404(a) bears the burden of demonstrating that a transfer is warranted. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979). The Supreme Court has recognized a limited exception to that rule only "[w]hen the parties have agreed to a valid forum-selection clause." *Atl. Marine,* 571 U.S. at 49, 62. In that limited circumstance, the private interest factors favor the

contractual forum, and the opposing party must show that "public-interest factors overwhelmingly disfavored a transfer" *Id.* at 62.

When a forum selection clause is asserted, the Court must first determine whether a valid forum-selection clause governs the particular dispute. *Gemini Techs., Inc. v. Smith & Wesson Corp.,* 931 F.3d 911, 913 (9th Cir. 2019). The Court must also determine whether the party against whom the clause is asserted is bound by it. *Rajagopalan v. NoteWorld, LLC,* 718 F.3d 844, 847 (9th Cir. 2013). Only a forum-selection clause that encompasses the claims at issue may be enforced. *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir. 1988). ("Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract.").

Absent a valid forum-selection clause governing the dispute, the ordinary § 1404(a) standard applies, and the Court must "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988).

## III. ARGUMENT

### A. Ms. Mittal is Not Bound by the Merger Agreement's Venue Clause

The Merger Agreement cannot support transfer because Ms. Mittal never signed the agreement. A non-signatory is bound by a forum-selection clause only under "ordinary contract and agency principles" including "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel", or as a third-party beneficiary. *Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006). Because generally, only signatories are bound by contractual dispute resolution provisions, equitable estoppel is narrowly confined when invoked against a non-signatory. *Murphy v. DirecTV, Inc.,* 724 F.3d 1218, 1233-34 (9th Cir. 2013). Defendants here only argue

equitable estoppel and third-party beneficiary theories, neither of which is applicable. (Doc. #53 p. 9).

Equitable estoppel binds a non-signatory only where it "knowingly exploits the agreement" containing the clause and its own claims are intertwined with, and depend on, that agreement. *Comer,* 436 F.3d at 1098. In *Comer*, the Ninth Circuit declined to bind the non-signatory, because neither equitable estoppel nor third-party beneficiary principles applied. *Id.* at 1101-02. Likewise, here, Ms. Mittal has not asserted any rights under the Merger Agreement, and her tort claims neither rely on it nor exploit it. Estoppel cannot rest on the mere fact that the parties' had some sort of agreement without any nexus to the claims. The claims must depend on the agreement. Defendants have not shown that Ms. Mittal's claims depend on or require any interpretation of the agreement.

Defendants' reliance on *Manetti-Farrow* is misplaced. That conduct was "so closely related to the contractual relationship that the forum selection clause applie[d] to all defendants" and that the claims required interpreting the contract. *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 n.5 (9th Cir. 1988). It does not support compelling a non-signatory plaintiff to litigate tort claims that do not require interpretation of the agreement. Here, Ms. Mittal is not seeking to enforce the terms of the Merger Agreement.

Finally, a non-signatory is bound as a third-party beneficiary only where the contracting parties intended to confer a direct benefit on the third-party and that third-party seeks to enforce rights under the contract. *Murphy v. DirecTV, Inc.,* 724 F.3d 1218, 1234 (9th Cir. 2013). Here, Ms. Mittal is a plaintiff in the SDNY case in her capacity as a Class I Director of the Independent Board and not to personally exploit the Merger Agreement.

**B. The Agreements Do Not Encompass Independent Torts**

Defendants argue that the "relating to" language in the agreements should boundlessly apply. (Doc. #53 pp. 6, 8-9). That argument is belied by the language of the terms themselves. The Merger

Agreement venue clause states:

> [E]ach of the parties hereto…. (C) agrees that it will not bring any action relating to any Transaction Agreement or any Transaction in any court other than any New York state court or any Federal court sitting in the State of New York.

(Doc. #51-1, Ex. 30 at p. 65). It is accompanied by a choice of law provision which states in bold, all capitalized letters:

> **SECTION 9.08. <u>GOVERNING LAW.</u> THIS AGREEMENT AND ANY DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, REGARDLESS OF THE LAWS THAT MIGHT OTHERWISE GOVERN UNDER APPLICABLE PRINCIPLES OF CONFLICTS OF LAWS THEREOF, EXCEPT TO THE EXTENT THE LAWS OF THE STATE OF VERMONT ARE MANDATORILY APPLICABLE TO THE MERGER.**

(*Id*. at p. 64; emphasis in original) Ms. Mittal's claims do not relate to any Transaction Agreement, and Defendants apparently agree that they do not "arise out of or relating to… this agreement[]" because they seek to apply only California law to Ms. Mittal's claims (Doc. #50). Defendants certainly do not explain the logic as to how the venue clause should be applied to a non-signatory while they are allowed to ignore their own bold print choice of law provision.

The Settlement Agreement's venue provision addresses "any action relating to" the Settlement Agreement; it too is accompanied by a "Governing Law" provision, which states:

> 13. Governing Law: This Settlement Agreement and ***any dispute arising out of this Settlement Agreement shall be governed by, and construed in accordance with, the laws of the state of New York***, regardless of the laws that might otherwise govern under applicable principles of conflicts of law.

(Doc. #51-1, Ex. 29). Again, Defendants have urged the application of California law to Ms. Mittal's claims (Doc. #50).

Moreover, Defendants have not pointed to any language in the agreements that would contemplate defamation claims about false accusations of financial and other misconduct. Those claims depend on the veracity of the accusations. *Mitchell v. Twin Galaxies, LLC,* 70 Cal. App. 5th

207, 218 (2021). The Ninth Circuit has not adopted a categorical rule that every dispute between contracting parties that contains "relating to" language is automatically subject to a forum-selection clause. The Court must still examine whether the claims bear the requisite connection to the language of the relevant agreement. In *Orange, S.A. v. United States District Court*, the Ninth Circuit declined to apply a clause covering disputes "arising out of or relating to" a nondisclosure agreement where the plaintiff's tort claims were factually distinct from the agreement and could be adjudicated without reference to it. 818 F.3d 956, 962-63 (9th Cir. 2016). The Court approved the district court's determination that the claims neither required interpretation of nor had a sufficient relationship to the agreement. *Id.*

District courts in this Circuit have applied the same principle with respect to claims, including defamation claims, unrelated to an agreement. For example, *CZ Servs. v. Express Scripts Holding Co.,* No. 3:18-cv-04217-JD, 2018 U.S. Dist. LEXIS 141087, at *6-7 (N.D. Cal. Aug. 20, 2018) involved a situation where the plaintiff retail pharmacies ("CZ") once had a business relationship with the defendant pharmacy manager companies ("ESI"), a relationship subjected to the terms of the defendants' "standard-form pharmacy provider agreement[s]." That relationship ended acrimoniously, and public accusations ensued. CZ filed a complaint in this district, asserting numerous causes of action, including defamation, Lanham Act violations and trade libel. ESI moved to transfer under § 1404(a), relying on forum selection clauses, one of which states: "all litigation between the parties arising out of or related in any way to the interpretation or performance of the Agreement shall be litigated in a U.S. District Court located in the state of Delaware." *Id*. at **4-5.

Pointing out that the clauses only applied to claims requiring interpretation of the agreements, the court declared:

> ***These principles weigh against a transfer because most of the claims in the amended complaint arise entirely outside the provider agreements.*** The defamation claim (Count 6), and the related dependent claims under the Lanham Act (Count 1), the defamation portions of the California Unfair Competition Law

> ("UCL") claim (Count 3), and the claims for trade libel (Count 2) and intentional and negligent interference with prospective economic relations (Counts 4 and 5) will stand or fall without any reference to the agreements. ***These claims are premised on ESI's public statements that plaintiffs flouted state pharmacy laws, operated illegally, and put the health of patients at undue risk. They are not based on the terms of the provider agreements, and plaintiffs have expressly represented that they will not sue on any statements about plaintiffs' alleged violations of the provider agreements.*** Consequently, the defamation claims will depend on evidence and proof unrelated to the provider agreements.

(*Id*. at **6-7 (emphasis added; citations omitted)). The Court also found that one of the claims "indisputably" fell within the scope of the forum-selection clause, but nonetheless denied the motion:

> The optimal outcome is to retain all of plaintiffs' claims here for supervision "in a single court by a single judge," to use ESI's words. That outcome is most consistent with the fair and efficient administration of justice, and the parties' contractual expectations.

(*Id*. at *12). In so holding, the Court cited *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 13-3349 SI, 2014 U.S. Dist. LEXIS 55234, 2014 WL 1477748, at *1 (N.D. Cal. Apr. 14, 2014), where the Court denied a motion to transfer because "the vast majority of the alleged wrongdoing in this case is not governed by the agreement."

### C. Ms. Mittal's Claims Require No Interpretation of Either Agreement

In *Manetti-Farrow*, the plaintiff's tort claims fell within the clause because "[t]he claims [could] not be adjudicated without analyzing whether the parties were in compliance with the contract." 858 F.2d at 514. Thus, where a tort claim can be resolved without construing the agreement, the clause does not apply. The Court must determine whether Plaintiff's claims fall within the scope of the asserted agreements.

Ms. Mittal pleads defamation per se, false light, and intentional infliction of emotional distress. (Doc. #24 ¶¶107-121). To decide whether Defendants are liable for these claims, the factfinder does not need to interpret any provision of the Merger Agreement. For example, whether Defendants' statements that Ms. Mittal engaged in self-dealing, improperly benefited from foundation

funds, diverted funds, or created a toxic work environment are false will be proved by evidence not requiring the interpretation of any contractual term. *Id.* at ¶¶29-39, 40-47. Defendants identify no provision of the Merger Agreement that a factfinder would have to interpret to decide whether Defendants' statements were false and made with actual malice. Indeed, Defendants have redacted the substantive terms of that document.

Nor do any of the statements at issue require the interpretation of any term of the Settlement Agreement. Had any of the specific accusations which Ms. Mittal claims to be false implicated a term of the Settlement Agreement, Defendants certainly would have identified it in their motion.

Tellingly, in Defendants' accusation that Ms. Mittal "diverted funds", they did not claim that Ms. Mittal had violated the Settlement Agreement. (FAC ¶47; Doc. #24-3 at 3 and 4 of 6). Ms. Mittal alleges that the "diversion of funds" accusation is false (FAC ¶48), and she can prove its falsity without regard to any provision in the Settlement Agreement. For example, all of the contributions at issue were disclosed, and Defendants were aware of them. Unilever never criticized or objected to Ms. Mittal's discretionary contributions as a Foundation trustee. The first time Defendants informed her of an objection came in the December 15, 2025 ouster letter. (FAC ¶101). Further, "U-Fund" contributions in no way implicated Unilever funds. (FAC ¶89; Doc. 24-4 at 17 of 24 (U-Fund is "an independent funding pool"). See also Exhibit A, Declaration of Elizabeth Bankowski at ¶¶5, 12-19 (all of the contributions at issue complied with BNJF policy).

**D. Transfer Is Not Warranted.**

As addressed above, Defendants have failed to show that a forum-selection clause applies to Ms. Mittal's claims. Accordingly, the private-interest factors are not presumed to favor the purported contractual forum, and the burden does not shift to Ms. Mittal to show that the public-interest factors weigh against transfer. The general Section 1404(a) standard applies, and Defendants bear the burden of establishing that the convenience of the parties and witnesses and the interest of justice warrant

transfer. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 n.5 (9th Cir. 2000). Ms. Mittal's choice of her home forum is entitled to substantial deference. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981). Under that standard, Defendants have not justified a transfer.

Even considering the public-interest factors, they do not favor New York. *Atlantic Marine* identifies the following public interest considerations: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law. 571 U.S. 49, 62 n.6. Each of these factors point to California as the proper venue. Ms. Mittal is a California resident (Doc. #24 ¶ 1), the Oakland Institute is a California non-profit, the reputational injury she alleges was suffered in California (*Id.* at ¶¶ 5-7), and her claims arise under California tort law. California's interest in adjudicating a defamation action brought by one of its residents who suffered harm with the state is substantial.

Defendants' remaining argument, that this action overlaps with the SDNY case and the risk of inconsistent rulings, does not support transfer. The SDNY case involves separate matters involving breaches of the Merger Agreement and Settlement Agreement and seek reinstatement and contractual remedies. On August 21, 2026, the court in *Ben & Jerry's Homemade, Inc. v. Unilever PLC,* 2026 U.S. Dist. LEXIS 188978 (S.D.N.Y. Aug. 21, 2026) (attached as Ex. 1 to Plaintiff's Request for Judicial Notice ("RJN")), entered an order which dramatically winnowed the number and scope of the plaintiff's claims. That order dismissed seven of the plaintiffs' counts, and substituted Magnum for Unilever as a defendant. The Court denied the motion to dismiss as to: (1) the Class 1 Directors' claim that "they were wrongly deemed ineligible and thus removed, or not appointed in violation of section 6.14(a) [of the Merger Agreement]" *Id.* at **30-31, and (2) the Class 1 Directors' claim for breach of section 2(b), (g) and (j) of the Settlement Agreement by "censoring Ben & Jerry's social mission," replacing Ben & Jerry's CEO, implementing retroactive term limits, and issuing statements

about Ben & Jerry's Social Mission not approved by the Independent Board (*Id.* at **31-33). Unilever is no longer a party in that case; Defendant Senf never was a party in that case. *Id.* at caption and *40. Fact Discovery in that case is scheduled to close on October 16, 2026. (Ex. 2 to Plaintiff's RJN).

This action is Ms. Mittal's individual suit for reputational harm, governed by California law. While there may be inevitable overlap in some of the factual background, the dispositive legal issues differ. None of the few remaining claims in that suit turn on whether Defendants' statements at issue in this case constituted defamation, and two of the three parties in this case are not parties in the SDNY case. Shared background facts do not make the public interest factors overwhelmingly favor transfer, and there is no risk of inconsistent rulings.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Transfer Venue.

DATE: September 9, 2026

Respectfully submitted

By: */s/ Paul K. Vickrey*
Paul K. Vickrey

THOMAS B. HARVEY (CA Bar #287198)
**LAW OFFICES OF THOMAS B. HARVEY**
365 E. Avenida De Los Arboles, #226
Thousand Oaks, CA 91360
Telephone: (805) 768-4440
tbhlegal@proton.me

PAUL K. VICKREY (*Pro Hac Vice*)
PATRICK F. SOLON (*Pro Hac Vice*)
DYLAN M. BROWN (*Pro Hac Vice*)
**VITALE, VICKREY, NIRO, SOLON & GASEY LLP**
311 S. Wacker Drive, Suite 2200
Chicago, IL 60606
(312) 236-0733
vickrey@vvnlaw.com
solon@vvnlaw.com
dbrown@vvnlaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under Fed. R. Civ. P. 5(b) on this the 9th day of September 2026.

Dated: September 9, 2026

By: */s/ Paul K. Vickrey*
Paul K. Vickrey
*Attorney for Plaintiff*