**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Robert M. Schwartz (SBN: 117166)
robertschwartz@quinnemanuel.com
Marie M. Hayrapetian (SBN: 315797)
mariehayrapetian@quinnemanuel.com
Julian T. Schoen (SBN: 344202)
julianschoen@quinnemanuel.com
Arian J. Koochesfahani (*pro hac vice*)
ariankoochesfahani@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendants Unilever PLC, The Magnum Ice Cream Company N.V., and Jochanan Senf*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANURADHA MITTAL,<br><br>Plaintiff,<br><br>vs.<br><br>UNILEVER PLC, THE MAGNUM ICE CREAM COMPANY N.V., and JOCHANAN SENF,<br><br>Defendants. | Case No. 26-cv-02660-WHO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Judge: Hon. William H. Orrick<br>Hearing Date: October 7, 2026<br>Hearing Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor |

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....1

ARGUMENT ....2

I. PLAINTIFF MITTAL FAILS TO SUSTAIN HER BURDEN OF ESTABLISHING PERSONAL JURISDICTION OVER ANY DEFENDANT ....2

A. Plaintiff Mittal Relies Solely On Purposeful Direction And Reasonableness ....2

B. Plaintiff Mittal Fails To Show Purposeful Direction ....3

1. To Show Express Aiming, Plaintiff Mittal Relies Almost Entirely On A Misreading Of *Briskin* ....3

2. Plaintiff Mittal's Non-*Briskin* Arguments Confirm The Absence Of "Express Aiming" and Thus the Lack of Purposeful Direction ....5

3. To Show Knowledge Of Harm Likely Suffered In The Forum, Plaintiff Mittal Relies Solely On An *Ipse Dixit* ....8

C. Plaintiff Mittal Fails To Refute Defendants' Argument That Exercising Jurisdiction Over Them As Foreign Defendants Would Be Unreasonable ....9

CONCLUSION ....11

# TABLE OF AUTHORITIES

**Page**

## Cases

*Barkley & Assocs., Inc. v. Brunshidle*,
2025 WL 2946906 (C.D. Cal. Sept. 10, 2025) .......... 3

*Bianchi v. Dietrich*,
2026 WL 529640 (C.D. Cal. Feb. 20, 2026) .......... 6

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .......... 1, 3, 4, 5

*Calder v. Jones*,
465 U.S. 783 (1984) .......... 5

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993) .......... 8

*Dalrada Precision Corp. v. Stuart Cox*,
2026 WL 2521846 (S.D. Cal. Aug. 26, 2026) .......... 4

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) .......... 10

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) .......... 10

*Gordy v. Daily News*,
95 F.3d 829 (9th Cir. 1996) .......... 10

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) .......... 4

*In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*,
--- F.4th ---, 2026 WL 2683536 (9th Cir. Sept. 14, 2026) .......... 3

*Newman v. Figgins*,
2021 WL 5927873 (C.D. Cal. Sept. 23, 2021) .......... 7

*P2F Holdings, LLC v. Vicini Am., Inc*,
2016 WL 9343899 (C.D. Cal. Dec. 5, 2016) .......... 6

*Remick v. Manfredy*,
238 F.3d 248 (3d Cir. 2001) .......... 8

*Roth v. Garcia Marquez*,
942 F.2d 617 (9th Cir. 1991) .......... 10

*Rounds v. Case-Mate Inc.*,
2025 WL 1873999 (C.D. Cal. July 2, 2025) ..... 3

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ..... 5

*Slack Techs., Inc. v. Phoji, Inc.*,
2020 WL 4701174 (N.D. Cal. Aug. 13, 2020) ..... 7

*Walden v. Fiore*,
571 U.S. 277 (2014) ..... 5

*Western States Hockey League, Inc. v. Doungchak*,
2016 WL 5886901 (C.D. Cal. Mar. 7, 2016) ..... 4

*Williams v. Kula*,
2020 WL 7770915 (S.D. Cal. Dec. 29, 2020) ..... 4

*Wing v. Airstream, Inc.*,
2024 WL 5006249 (C.D. Cal. Sept. 19, 2024) ..... 9

*Young v. New Haven Advocate*,
315 F.3d 256 (4th Cir. 2002) ..... 4

**Statutes**

Cal. Civ. Code § 47(b) ..... 6

## PRELIMINARY STATEMENT

Plaintiff Mittal's Opposition confirms that the Court should grant Defendants' Motion to Dismiss for lack of personal jurisdiction. The Opposition (Dkt. 61, "Opp.") narrows the disputed issues to the purposeful direction and reasonableness factors of specific personal jurisdiction, both of which compel dismissal as a matter of law for three central reasons.

*First*, Plaintiff Mittal's argument based on *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) is misdirected. Contrary to Plaintiff Mittal's contention that *Briskin* rejected "targeting," *Briskin* rejected "*differential* targeting"—a far different idea that would shield companies that target every state with identical conduct. That idea is inapposite here and is not relied on by Defendants, which is precisely why the Motion does not cite *Briskin*, as the Opposition notes. Dkt. 61 (Opp.) at 1. Plaintiff Mittal's related contention that Defendants "targeted" California because her non-profit, the Oakland Institute, is domiciled here improperly turns Plaintiff Mittal's own contacts with California into the animating force of Defendants' supposed purposeful direction, contrary to well-settled law.

And, in a desperate gambit that reveals the weakness of Plaintiff Mittal's claim of personal jurisdiction, the Opposition points to Defendants' attorneys' attendance at a confidential Rule 408 settlement meeting in San Francisco—a location requested by Plaintiff Mittal for her convenience!—as somehow bestowing personal jurisdiction over Defendants. It does not. So, too, the fact that the October 23, 2025 letter to the Class I directors included two directors who reside in California is insufficient to sustain Plaintiff Mittal's burden.

*Second*, the Opposition's claim that Defendants knew harm would likely be suffered in California is based on the unsupported assertion that Plaintiff Mittal's professional reputation is "centered" here and that Defendants knew this, is factually insufficient to support personal jurisdiction as a matter of law. Dkt. 61 (Opp.) at 9.

*Third*, regarding the reasonableness of holding these foreign defendants to answer in California, Plaintiff Mittal ignores much of Defendants' argument and engages in projection, incorrectly claiming that Defendants only focus on two reasonableness factors. In fact, Defendants rely on all seven, while Plaintiff herself narrowly relies on only two of the seven reasonableness

factors. There is no evidence of any purposeful interjection into California by Defendants, and Plaintiff Mittal points to none. The SDNY Case that Plaintiff Mittal and others filed is highly material, as Defendants' reply in support of their motion to transfer filed contemporaneously herewith explains. The forum-selection clauses addressed in those moving and reply papers establish New York as a viable alternative forum for Plaintiff Mittal to pursue these related claims in addition to her claims already being adjudicated there, assuming such claims are not dismissed for failure to state a claim. The upshot is that California's general interest in aiding its residents in having claims heard is clearly offset by its interest in enforcing forum-selection clauses, and all seven reasonableness factors tip sharply in favor of granting the instant Motion.

Defendants respectfully request that the Court dismiss the First Amended Complaint against all three Defendants without leave to amend, for lack of personal jurisdiction.

## ARGUMENT

### I. PLAINTIFF MITTAL FAILS TO SUSTAIN HER BURDEN OF ESTABLISHING PERSONAL JURISDICTION OVER ANY DEFENDANT

#### A. Plaintiff Mittal Relies Solely On Purposeful Direction And Reasonableness

The Opposition concedes that general personal jurisdiction is absent and "relies solely on specific jurisdiction." Dkt. 61 (Opp.) at 4. It likewise concedes that purposeful availment is absent and relies only on "purposeful direction"[1] and reasonableness, apparently having recognized the error of suggesting that any Defendant does business in California. *Id.* at 5; *see* Dkt. 52 (Mot.) at 11-12 & n.4; FAC at p. 3 (¶ 5).

By narrowing the issues to purposeful direction and reasonableness, Plaintiff Mittal moots two arguments raised by the parties. First, Defendants' argument regarding the "arising out of or related to" prong is now moot, as that argument applies only to rebut purposeful availment, which the Opposition does not attempt to establish. *See* Dkt. 52 (Mot.) at 16-17. *But see infra* at § I.B.2 (addressing a new issue). Second, the Opposition devotes multiple pages to the issue of when one

[1] Although Plaintiff Mittal originally alleged personal jurisdiction over Unilever based on offices in Los Angeles and San Francisco, she appropriately abandons that contention based on the evidence disproving those allegations.

party's contacts may be attributed to others, but that is an issue that Defendants addressed only with respect to purposeful availment. Dkt. 61 (Opp.) at 7-9. With purposeful availment now off the table, Plaintiff Mittal's arguments on imputation and corporate separateness are not germane and should be disregarded.

### B. Plaintiff Mittal Fails To Show Purposeful Direction

#### 1. To Show Express Aiming, Plaintiff Mittal Relies Almost Entirely On A Misreading Of *Briskin*

The Opposition asserts that *Briskin* overturned the traditional "'focal-point' or 'targeting' requirement" of purposeful direction to determine personal jurisdiction in defamation cases. Dkt. 61 (Opp.) at 1, 5-6. But *Briskin* did no such thing. The *Briskin* court simply rejected the notion that express aiming requires "differential targeting." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025) (*en banc*). "Differential targeting" refers to the notion that if a "company is everywhere, it is jurisdictionally nowhere." *Id.* For example, if a company "cultivates a nationwide audience[] for commercial gain," it is subject to specific jurisdiction in no state courts and in a federal court only if Federal Rule of Civil Procedure 4(k)(2) applies. *Id.* at 758 (quotation omitted). As *Briskin* explained, that outcome is absurd. If express aiming really turned on whether a corporation targets jurisdictions in *different* ways, this "would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states…." *Id.* at 758; *accord In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, --- F.4th ---, 2026 WL 2683536, at *6 (9th Cir. Sept. 14, 2026) (explaining *Briskin*'s holding).

Plaintiff Mittal's argument that "targeting" is no longer required to find purposeful direction conflates targeting (which is still required) with differential targeting (which is not). In *Briskin* itself, the court permitted the exercise of jurisdiction over Shopify precisely because that defendant had "*target[ed]* California consumers to extract, collect, maintain, distribute, and exploit for its own profit …." *Id.* at 755 (emphasis added).

Other plaintiffs struggling to establish personal jurisdiction have likewise overly relied on *Briskin*. *See, e.g.*, *Barkley & Assocs., Inc. v. Brunshidle*, 2025 WL 2946906, at *5-6 (C.D. Cal. Sept. 10, 2025) (Fitzgerald, J.) (rejecting plaintiff's attempt to "stretch[] *Briskin* beyond its terms");

*Rounds v. Case-Mate Inc.*, 2025 WL 1873999, at *6 (C.D. Cal. July 2, 2025) (Hsu, J.) ("[T]he Court does not agree that *Briskin* significantly alters the Effects Test.").

Plaintiff Mittal asserts that it is "no defense" under *Briskin* to drive allegedly defamatory statements into each jurisdiction at once. Dkt. 61 (Opp.) at 6. No doubt, but that misstates Defendants' position. Defendants' position is not that they expressly aimed the allegedly defamatory statements at every jurisdiction (which is untrue). Their position is that if there was any express aiming at all, it was at an audience "concentrated" in London, Amsterdam, and New York (in the case of the news articles and SEC statements) or else at Ben & Jerry's leadership (in the case of the October 23, 2025 letter). *See* Dkt. 52 (Mot.) at 13. Plaintiff Mittal has no response to this argument, which turns on the premise that the statements at issue were aimed *elsewhere* to the extent that they were aimed anywhere.

Plaintiff Mittal also invokes *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), but *Keeton* is inapt. Dkt. 61 (Opp.) at 6. In *Keeton*, the Supreme Court affirmed jurisdiction over Hustler due to Hustler's "regular circulation of magazines in the forum"—"some 10 to 15,000 copies" per month—as part of Hustler's business. 465 U.S. at 773-74. Defendants are not comparable. Unlike Hustler, which did regular business in the forum, Defendants undisputedly do no business in the forum. *See id.* at 774 ("Such regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous."). Put another way, "where there is no evidence that the defendant posted the allegedly defamatory information hoping to reach the forum state or an audience in the forum state specifically, the *Calder* effects test is not satisfied." *Dalrada Precision Corp. v. Stuart Cox*, 2026 WL 2521846, at *8 (S.D. Cal. Aug. 26, 2026). While that requirement was met in *Keeton* because Hustler's business was to publish magazines in hopes of reaching every state, it is not met here by Defendants.

Plaintiff Mittal next incorrectly claims that *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) turned on differential targeting. Dkt. 61 (Opp.) at 6. *Young* had nothing to do with

differential targeting.[2] In arguing otherwise, Plaintiff Mittal conflates *Briskin*'s rejection of differential targeting with the Supreme Court's instruction to assess the focus of the allegedly defamatory statement. *Briskin* used the phrase "forum-specific focus" in a single paragraph as a synonym for "differential targeting." *Briskin*, 135 F.4th at 757. It did not purport to overrule—nor could it overrule—*Calder*'s inquiry into whether "California is the focal point" of the statement, *Calder v. Jones*, 465 U.S. 783, 789 (1984), or whether the statement has "a California focus," *Walden v. Fiore*, 571 U.S. 277, 288 (2014) (summarizing *Calder*). *Briskin*'s silence on this issue is unsurprising because *Briskin* was a case about "privacy and data use violations," not defamation. 135 F.4th at 751.

The difference between differential targeting and the "focal point" inquiry is easily illustrated. Under *Briskin*, the act of mailing one hundred allegedly defamatory pamphlets into California is identical, from a jurisdictional perspective, to the act of doing so in all 50 states. But separately, under *Calder* and its progeny, those pamphlets must be analyzed to determine the focus of the allegedly defamatory statements within. *See infra* at § I.B.2.

Finally, Plaintiff Mittal implies that *Briskin* overturned *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004), thereby foreclosing any inquiry into the statements' "focus, purpose, and circulation." Dkt. 61 (Opp.) at 5. But far from overruling *Schwarzenegger*, *Briskin* treated *Schwarzenegger* as an example of good law. *See* 135 F.4th at 751, 753 (citing *Schwarzenegger* to establish the legal framework).

#### 2. Plaintiff Mittal's Non-*Briskin* Arguments Confirm The Absence Of "Express Aiming" and Thus the Lack of Purposeful Direction

To the limited extent that Plaintiff Mittal does not rely on her misreading of *Briskin*, her arguments are legally flawed for other reasons.

*First*, Plaintiff Mittal argues that the statements at issue focus on the Oakland Institute, and therefore on California, because the non-profit "was the vehicle of the alleged wrongdoing"—a *non*

---

[2] Plaintiff Mittal likewise claims (*id.* at 5) that *Williams v. Kula*, 2020 WL 7770915 (S.D. Cal. Dec. 29, 2020), and *Western States Hockey League, Inc. v. Doungchak*, 2016 WL 5886901 (C.D. Cal. Mar. 7, 2016), relied on differential targeting. Even a cursory review of those decisions refutes that.

*sequitur*. Dkt. 61 (Opp.) at 6-7. That the Oakland Institute was a vehicle for Plaintiff Mittal's improper conduct as a Ben & Jerry's director fails to convert the focus of the statements at issue away from what it was—namely, Plaintiff's improprieties as a Class I director—to anything about the Oakland Institute. The statements' focus is determined by their content. As Defendants explained in the Motion without rebuttal, the statements' content as a whole confirms that the Oakland Institute is not their focus. *See* Dkt. 52 (Mot.) at 13-15. Rather, the focus is Plaintiff's lapses as a Ben & Jerry's director. Plaintiff Mittal further argues that "[t]he 'improper benefit' charge"—only one finding among many instances of misconduct that the investigations revealed—"cannot be [fully] stated without its California subject." Dkt. 61 (Opp.) at 7. That may be so, but it is legally irrelevant to the statements' focus. Had Plaintiff Mittal placed Ben & Jerry's donations into a bank account in Nebraska, or buried them in a backyard in Florida, those venues would not become the focus of statements describing the breaches of her obligations as a board member. Defendants did not expressly aim any statements at California in the manner required to subject them to personal jurisdiction. The statements focus, instead, on Plaintiff Mittal's misconduct as a member of the board of a Vermont company, which in turn is owned by a Dutch company. The Oakland Institute is an incidental vehicle or instrumentality utilized by Plaintiff Mittal. Plaintiff Mittal tries and fails to distinguish *Young* on the ground that "Virginia entered the story [in *Young*] only because that is where Connecticut happened to send prisoners[.]" Dkt. 61 (Opp.) at 6. Far from distinguishing *Young*, this shows exactly why *Young* applies. As was the case with Virginia in *Young*, California is incidentally involved in this case because that is where Plaintiff Mittal happened to direct grant monies that were improperly commandeered in derogation of her duties as a board member.

*Second*, proving the age-old adage that no good deed goes unpunished, Plaintiff Mittal argues that Unilever and TMICC expressly aimed the at-issue statements at California by meeting with Plaintiff Mittal in San Francisco to discuss a possible settlement of the SDNY Case. Dkt. 61 (Opp.) at 6-7, 9. This meeting was arranged by litigation counsel for the parties in the SDNY Case, and was a Rule 408 settlement meeting attended only by counsel. Plaintiff Mittal's argument violates California Civil Code Section 47(b), which bars Plaintiff Mittal from using such settlement

discussions to advance her case. *Bianchi v. Dietrich*, 2026 WL 529640, at *8 n.8 (C.D. Cal. Feb. 20, 2026) ("privileged litigation document[s]" under Cal. Civ. Code § 47(b) are "not defamatory to establish personal jurisdiction"); *see also P2F Holdings, LLC v. Vicini Am., Inc.*, 2016 WL 9343899, at *3 n.4 (C.D. Cal. Dec. 5, 2016) ("[T]he Court will not consider the settlement negotiations in the jurisdictional analysis[.]"); FAC at p. 12 (¶ 43). Further, this argument again improperly relies on Plaintiff Mittal's residence in California, as Unilever and TMICC agreed to meet in San Francisco only because that would be convenient for *Plaintiff Mittal*. *See* Dkt. 61 (Opp.) at 9 (stating that the meeting occurred in San Francisco because Plaintiff Mittal "resides in Oakland"). Finally, the settlement meeting is a red herring, as it predates virtually all the statements at issue and none of the statements at issue was uttered during it. Plaintiff Mittal's claims do not arise out of or relate to the settlement meeting in any way, and whatever relevance it might have to purposeful direction is nullified by its failure to satisfy the "relatedness" requirement.[3]

*Third*, Plaintiff Mittal incorrectly argues that Defendants expressly aimed the statements at issue at California because two Class I directors who received the October 23, 2025 letter reside in California. Dkt. 61 (Opp.) at 1, 6-7. "The Supreme Court and Ninth Circuit have repeatedly stated that the minimum contacts inquiry centers on the defendant's contacts with the forum state, not on his or her contacts with third parties or residents of the forum state." *Newman v. Figgins*, 2021 WL 5927873, at *4 (C.D. Cal. Sept. 23, 2021) (collecting cases) (dismissing for lack of personal jurisdiction). That well-settled rule applies here, where Defendants aimed the letter at the *directors themselves*, not at California where two of them happened to live. *See id.* ("Even assuming that Defendant expressly aimed his conduct at Apple and Google … the fact that these third parties may be headquartered in California does not show that Defendant expressly aimed conduct at California."); *see also Slack Techs., Inc. v. Phoji, Inc.*, 2020 WL 4701174, at *4 (N.D. Cal. Aug. 13, 2020) (sending cease-and-desist letter to forum resident fails to establish jurisdiction). Plaintiff

[3] Plaintiff Mittal asserts that "Ms. Mittal's rejection of t[he] proposal in that San Francisco meeting led to all of Defendants' ensuing statements," but this only concedes that Plaintiff Mittal caused the later events. Dkt. 61 (Opp.) at 2. The irony is also apparently lost on Plaintiff Mittal that the settlement meeting was to resolve the SDNY Case, so her invocation of the meeting underscores the relatedness of the SDNY Case to the one at bar by her own account.

Mittal's use of a Rule 408 settlement meeting to try to establish personal jurisdiction reveals the weakness of her position.

### 3. To Show Knowledge Of Harm Likely Suffered In The Forum, Plaintiff Mittal Relies Solely On An *Ipse Dixit*

Plaintiff Mittal's response—really, non-response—regarding the *scienter* element of purposeful direction also fails for at least three reasons.

*First*, Plaintiff Mittal improperly relies on her counsel's say-so, unsupported by evidence. Of course, Defendants knew that Plaintiff Mittal—a Class I director of Ben & Jerry's—"resided in and worked" in California, but that is not enough to establish this element. Dkt. 61 (Opp.) at 9. The Opposition then asserts that Defendants knew that Plaintiff Mittal's "professional reputation was centered" in California due to the Oakland Institute—a cryptic, undefined description that contradicts Plaintiff Mittal's own allegations and lacks any evidentiary support. *Id.*

*Second*, Plaintiff Mittal makes no attempt to establish the underlying factual predicate about the "center" of her reputation. Her operation of a California non-profit demonstrates nothing about Defendants' intent or knowledge, and to accept her arguments on this issue now would require looking past her own pleadings that allege her reputation and work is *national* and *international* in scope—a facially sensible claim given the primacy of issues related to Israel and the Middle East about which she is most outspoken. *See* Dkt. 52 (Mot.) at 15-16. The Opposition's silence on these telltale allegations by Plaintiff Mittal herself speaks volumes.

*Third*, Plaintiff Mittal fails to address the on-point holding in *Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001), even though Defendants highlighted it. *See* Dkt. 52 (Mot.) at 16. *Remick* refutes Plaintiff Mittal's assertion that accusing "a known California resident of self-dealing through a California institution" gives rise to "precisely the knowledge *Calder* requires." Dkt. 61 (Opp.) at 10. As *Remick* explains, Plaintiff Mittal must go further by linking the site of her self-dealing (here, California) to the professional community that sustains her reputation. *See* Dkt. 52 (Mot.) at 16. But she makes no effort to do so here, because she cannot do so.

**C. Plaintiff Mittal Fails To Refute Defendants' Argument That Exercising Jurisdiction Over Them As Foreign Defendants Would Be Unreasonable**

Plaintiff Mittal's arguments regarding reasonableness are as untenable as her arguments on purposeful direction. Plaintiff Mittal first incorrectly asserts that Defendants rely "almost entirely on the two reasonableness factors that always favor a foreign defendant: the burden of defending from abroad and the sovereignty of the home nation." Dkt. 61 (Opp.) at 10. The Motion makes clear that Defendants rely on all seven factors. *See* Dkt. 52 (Mot.) at 17-18. Further, Plaintiff Mittal misleadingly refers to "[t]he factors that matter." Dkt. 61 (Opp.) at 11. Under controlling precedent, all of the factors matter. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) ("None of the factors is dispositive in itself; instead, we must balance all seven."). A review of the factors demonstrates Plaintiff's failure to sustain her burden here also.

**(1) Purposeful interjection into the forum state's affairs.** Plaintiff Mittal argues that "reasonableness follows the contacts" that establish purposeful direction. Dkt. 61 (Opp.) at 11. Not so. Such a rule would render this factor superfluous. In reality, this factor looks beyond the contacts that establish purposeful direction. *See Core-Vent Corp.*, 11 F.3d at 1488. As Defendants have shown without rebuttal, the extent of their interjection into California is negligible because the only "interjection" would lie in the defamatory statements themselves. *See* Dkt. 52 (Mot.) at 2-3, 12-13, 17; *see also Core-Vent Corp.*, 11 F.3d at 1488 ("Although perhaps sufficient to meet the purposeful availment test, the Swedish doctors' contacts with the forum state are nevertheless attenuated," so "this factor weighs in their favor.").

**(2) Burden of defending in the forum.** Plaintiff Mittal concedes that this factor favors Defendants.

**(3) Extent of conflict with the sovereignty of the defendant's home state.** Plaintiff Mittal concedes that this factor favors Defendants.

**(4) Forum state's interest in adjudicating the dispute.** Plaintiff Mittal relies on California's interest in providing a remedy to tortiously injured citizens. Dkt. 61 (Opp.) at 11. But that interest is counterbalanced in this case by California's interest in enforcing forum-selection clauses. *See, e.g.*, *Wing v. Airstream, Inc.,* 2024 WL 5006249, at *2 (C.D. Cal. Sept. 19, 2024)

("California's public policy generally favors enforcement of forum-selection clauses." (citation omitted)). Further, Plaintiff Mittal's alleged reputational injury has only an attenuated connection to California. Thus, this factor is neutral at best.

**(5) Most efficient judicial resolution of the controversy.** Plaintiff Mittal asserts that California is the most efficient forum because "Mittal, the Oakland Institute, [and] the witnesses" are all based in California. Dkt. 61 (Opp.) at 11. But this argument turns on false premises. The witnesses are not all in California. The record undisputedly shows that "many of [Defendants'] potential witnesses reside elsewhere." Dkt. 52 (Mot.) at 17; *see also* Dkt. 52-1 (Cavaliere Decl.) at ¶ 9; Dkt. 52-2 (Stotzer Decl.) at ¶ 9; Dkt. 52-3 (Senf Decl.) at ¶¶ 4, 7. Further, the Oakland Institute's location is irrelevant. To the extent there might be discovery from the Oakland Institute, Plaintiff Mittal would be the custodian. Thus, Plaintiff Mittal's argument reduces to the proposition that California is the most efficient forum because Plaintiff Mittal resides here. That is non-responsive to Defendants' argument regarding the SDNY Case, in which Plaintiff Mittal is a plaintiff and fact discovery on the same underlying facts is already nearing completion. *See* Dkt. 52 (Mot.) at 18; Dkt. 61 (Opp.) at 4.

**(6) Importance of the forum to the plaintiff's interests in convenient and effective relief.** Plaintiff Mittal concedes that this factor favors Defendants insofar as Defendants can discern no argument in her brief that addresses it.

**(7) Existence of an alternative forum.** Plaintiff Mittal essentially argues that New York is unavailable because the forum-selection clauses do not apply.[4] Dkt. 61 (Opp.) at 11-12. As explained in Defendants' reply in support of their Motion to Transfer filed contemporaneously herewith, the forum-selection clauses apply to all Defendants and to Plaintiff Mittal. This renders New York not only available but mandatory as an alternative forum. Plaintiff Mittal also misleadingly claims that "[n]o Defendant is located in New York, and Defendants have identified no witnesses in New York." *Id.* These claims ignore that Plaintiff Mittal already brought claims in

[4] Although Plaintiff Mittal also asserts (*id.* at 12) that Mr. Senf "is not a party to the New York case" and questions whether New York courts would have personal jurisdiction over him, she incorrectly assumes that Mr. Senf cannot invoke the forum-selection clauses.

New York against Unilever and TMICC, and that TMICC has now stepped into Unilever's shoes via Rule 25(c) substitution. *See* Dkt. 61 (Opp.) at 4 (acknowledging court order "substituting Magnum for Unilever").

Finally, Plaintiff Mittal's other cases are inapposite, as the facts in those cases weighed far more heavily in the plaintiffs' favor. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002) ("In this case, only two of the seven factors—burden on defendants and sovereignty conflicts—favor [the defendants]."); *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996) (Defendants "are in a business in which they deal with California matters regularly; the Daily News sends reporters to California; and the Daily News serves subscribers in California[.]"); *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991) ("This is, in sum, an extremely close question."); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984) ("The defendants' numerous visits to Tucson and Jensen's solicitation of the distributorship agreement there demonstrate a purposeful interjection into the state of Arizona."). Moreover, in none of those cases was there a forum-selection clause that required the case to be brought in a different forum.

## CONCLUSION

Defendants respectfully request that the Court dismiss the First Amended Complaint, without leave to amend, for lack of personal jurisdiction.

DATED: September 23, 2026

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: /s/ Steven G. Madison
Steven G. Madison
Robert M. Schwartz
Marie M. Hayrapetian
Julian T. Schoen
Arian J. Koochesfahani

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under Fed. R. Civ. P. 5(b) on this the 23rd day of September 2026.

Dated: September 23, 2026

By: */s/ Steven G. Madison*
Steven G. Madison
*Attorney for Defendants*