QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Robert M. Schwartz (SBN: 117166)
robertschwartz@quinnemanuel.com
Marie M. Hayrapetian (SBN: 315797)
mariehayrapetian@quinnemanuel.com
Julian T. Schoen (SBN: 344202)
julianschoen@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000

*Attorneys for Defendants Unilever PLC,*
*The Magnum Ice Cream Company N.V., g*
*and Jochanan Senf*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANURADHA MITTAL,<br><br>Plaintiff,<br><br>vs.<br><br>UNILEVER PLC, THE MAGNUM ICE CREAM COMPANY N.V., and JOCHANAN SENF,<br><br>Defendants. | Case No. 26-cv-02660-WHO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR SPECIAL MOTION TO STRIKE (CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16) AND MOTION TO DISMISS (FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6))**<br><br>Judge: Hon. William H. Orrick<br>Hearing Date: October 7, 2026<br>Hearing Time: 2:00 p.m.<br>Courtroom: 2 |

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE REPLY ........ 1
ARGUMENT ........ 1
I. DEFENDANTS' MOTION ADHERES TO THE PROPER RECORD ........ 1
II. DEFENDANTS HAVE SATISFIED ANTI-SLAPP STEP ONE ........ 2
III. MITTAL HAS NOT SATISFIED HER BURDEN AT ANTI-SLAPP STEP TWO ........ 5
A. Mittal Has Failed To Demonstrate That The *Semafor* Article Is Actionable ........ 5
B. Mittal Has Failed To Demonstrate That The October 23 Letter Is Actionable. ........ 6
C. Mittal Has Failed To Demonstrate That The November SEC Form 20-F and December Prospectus Statements Are Actionable. ........ 9
D. The December 2025 News Articles Are Inactionable. ........ 11
E. Mittal Has Failed To Demonstrate Actual Malice. ........ 13
F. Mittal Has Failed To Show That Her Two Other Claims Have Merit. ........ 14
CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Strauss Neibauer & Anderson APC Profit Sharing 401(k) Plan*,
2010 WL 5059652 (E.D. Cal. Dec. 6, 2010) ..... 6

*Avid Life Media, Inc. v. Infostream Grp., Inc.*,
2013 WL 6002167 (C.D. Cal. Nov. 12, 2013) ..... 6

*Bailey v. Enloe Med. Ctr.*,
2024 WL 3540331 (E.D. Cal. July 24, 2024) ..... 5

*Balla v. Hall*,
59 Cal. App. 5th 652 (2021) (Opp. 16-17) ..... 8, 9

*Baral v. Schnitt*,
1 Cal. 5th 376 (2016) ..... 5

*Bently Reserve LP v. Papaliolios*,
218 Cal. App. 4th 418 (2013) ..... 7

*Buscemi v. McDonnell Douglas Corp.*,
736 F.2d 1348 (9th Cir. 1984) ..... 15

*Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002) ..... 5

*Carafano v. Metrosplash.com Inc.*,
207 F. Supp. 2d 1055 (C.D. Cal. 2002) ..... 5

*Charney v. Standard Gen., L.P.*,
10 Cal. App. 5th 149 (2017) ..... 9, 11, 12

*CoreCivic, Inc. v. Candide Grp., LLC*,
46 F.4th 1136 (9th Cir. 2022) ..... 5, 7

*Donovan v. Mazzola*,
716 F.2d 1226 (9th Cir. 1983) ..... 6

*Eliott v. Lions Gate Ent. Corp.*,
639 F. Supp. 3d 1012 (C.D. Cal. 2022) ..... 6

*FilmOn.com Inc. v. DoubleVerify Inc.*,
7 Cal. 5th 133 (2019) ..... 2, 3, 4

*Freeman v. Wells Fargo & Co.*,
2023 WL 4828678 (N.D. Cal. July 26, 2023) ..... 12

*Gallagher v. Philipps*,
563 F. Supp. 3d 1048 (S.D. Cal. 2021) .......... 6

*Gregory v. McDonnell Douglas Corp.*,
17 Cal. 3d 596 (1976) .......... 11

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) .......... 13

*Hawran v. Hixson*,
209 Cal. App. 4th 256 (2012) .......... 7, 10, 11, 13

*Hicks v. Richard*,
39 Cal. App. 5th 1167 (2019) .......... 14

*Hogan v. Weymouth*,
2019 WL 11055032 (C.D. Cal. Aug. 19, 2019) .......... 8

*Industrial Waste & Debris Box Service, Inc. v. Murphy*,
4 Cal. App. 5th 1135 (2016) .......... 4

*Issa v. Applegate*,
31 Cal. App. 5th 689 (2019) .......... 6

*Jackson v. Metal Improvement Co.*,
2012 WL 8968996 (C.D. Cal. Nov. 26, 2012) .......... 15

*Janken v. GM Hughes Elecs.*,
46 Cal. App. 4th 55 (1996) .......... 15

*Kiehn v. Stein*,
2013 WL 1789718 (N.D. Cal. Apr. 26, 2013) .......... 8

*Lieberman v. Fieger*,
338 F.3d 1076 (9th Cir. 2003) .......... 14

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) .......... 9

*Mitchell v. Twin Galaxies LLC*,
70 Cal. App. 5th 207 (2021) .......... 13

*Navellier v. Sletten*,
29 Cal. 4th 82 (2002) .......... 3

*Overstock.com v. Gradient Analytics*, *Inc.*,
151 Cal. App. 4th 688 (2007) (Opp. 20) .......... 13

*Payne v. D.C.*,
773 F. Supp. 2d 89 (D.D.C. 2011) .......... 15

*Pechkis v. Trustees of California State University*,
119 Cal. App. 5th 497 (2026)....................................................................................... 4

*Resolute Forest Prods., Inc. v. Greenpeace Int'l.*,
302 F. Supp. 3d 1005 (N.D. Cal. 2017) ...................................................................... 14

*Ruiz v. Harbor View Community Assn.*,
134 Cal. App. 4th 1456 (2005)............................................................................. 10, 12

*Savage v. Pac. Gas & Elec. Co.*,
21 Cal. App. 4th 434 (1993)..................................................................................... 8, 9

*Smith v. Maldonado*,
72 Cal. App. 4th 637 (1999)......................................................................................... 6

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)......................................................................................... 1

*Sustrick v. CI Cap. Partners LLC*,
2025 WL 1626175 (N.D. Cal. May 5, 2025) ............................................................. 15

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
420 F. Supp. 3d 966 (N.D. Cal. 2019) ......................................................................... 5

*Vogel v. Felice*,
127 Cal. App. 4th 1006 (2005).................................................................................. 7, 13

*Wynn v. Chanos*,
75 F. Supp. 3d 1228 (N.D. Cal. 2014) ......................................................................... 5

**Other Authorities**

C.C.P. § 425.16 ................................................................................................... 1, 2, 3

Fed. R. Civ. P. 11 ........................................................................................................ 8

Fed. R. Civ. P. 12 ................................................................................................ 1, 5, 14

Fed. R. Evid. 408........................................................................................................ 14

## SUMMARY OF THE REPLY

Mittal cannot salvage her First Amended Complaint ("FAC"). The Court should grant Defendants' anti-SLAPP and Rule 12(b)(6) Motion, with prejudice:

***Plaintiff's claims are subject to the anti-SLAPP statute***. Courts apply Step One of the statute broadly. All of Mittal's claims arise from Defendants' speech on issues of public interest about the Ben & Jerry's Board and social mission. That satisfies C.C.P. § 425.16(e)(3) & (4).

***The Court may strike inactionable statements***. Mittal cannot artfully plead around the anti-SLAPP statute. Under California Supreme Court caselaw, courts may strike inactionable statements from mixed claims that allege actionable speech.

***Mittal failed to, and cannot, allege falsity***. Mittal has not alleged and cannot allege that Defendants' statements—such as how much money the Ben & Jerry's Foundation ("Foundation") gave to the Oakland Institute ("OI"), how much money she pulled out of OI for her own use, her refusal to sign TMICC's Code of Business Integrity, and its adoption of term limits—are false. The record shows that the statements are true.

***Mittal cannot pursue claims based on opinions***. Statements of opinion, such as judgments about an executive's qualifications, are inactionable. Even if any of Defendants' opinions can be said to have been based on undisclosed facts, those facts are true.

***Mittal failed to, and cannot, allege actual malice***. Opinions and true statements cannot be made with malice. Her malice allegations also fail because she failed to identify the speaker.

***Mittal's derivative claims fail***. Mittal's false light and IIED claims fail for the same reasons her defamation claim does. Even assuming her IIED claim arises from conduct other than Defendants' statements, appointment decisions fall short of "extreme and outrageous" conduct.

## ARGUMENT

### I. DEFENDANTS' MOTION ADHERES TO THE PROPER RECORD

Mittal accuses Defendants of "mak[ing] several statements of 'fact' which are untethered to the record." Opp. 2. But Mittal misstates the law, the record, and Defendants' Motion. "The court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The Motion's facts are drawn from the FAC, its exhibits, and tax returns subject to Defendants' unopposed Request for Judicial Notice. Despite her efforts, Mittal cannot object to that record. For example, she says that Defendants went beyond the record to argue that she "refused to be interviewed" in the business integrity investigation. Opp. 2. Not true. The October 23 Letter—attached as Exhibit C to Mittal's FAC—states that she "refused to cooperate in the investigation or the Foundation audit." Ex. C at 5.

Mittal argues that the *Semafor* article's claim that Mittal's OI "has received more than $200,000 from the foundation since 2016, according to tax filings" fails to account for money OI supposedly distributed to social causes. Opp. 3; *see* Ex. A to FAC. But *Semafor*'s statement that OI received over $200,000 from the Foundation is no less true if OI gave some of the funds to someone other than Mittal. And Mittal does not deny that she pulled substantial cash from OI to compensate herself and to pay her mortgage. Opp. 4-5.

Mittal also protests Defendants' mention of OI's receipt of "an additional $400,000" from organizations that received Foundation funds, which constituted "donation laundering." Opp. 2. But that's what the October 23 Letter attached as Exhibit C to her pleading says, which makes that fact proper to consider. Again, Mittal does not deny these facts. To distract, she notes that the Tides Foundation donated to OI before that entity supposedly began receiving "significant contributions" from the Foundation. Opp. 4. That does not change that OI received funds from entities that were being funded by the Foundation, including Tides, when Mittal was a trustee.

## II. <u>DEFENDANTS HAVE SATISFIED ANTI-SLAPP STEP ONE</u>

Mittal does not dispute that the alleged defamatory statements discuss issues of public interest under C.C.P. § 425.16(e)(4). *See* Opp. 7-8. She argues instead that Defendants failed to show "what functional relationship exists between the speech and the public conversation about some matter of public interest" sufficient to "further" the public discourse under *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149-50 (2019). Opp. 7-8.

Mittal misreads *FilmOn.com.* Judges do not lay down a yardstick against which a defendant's statements must "advance" a debate on a public issue. Courts "are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any

particular direction; rather, we examine whether a defendant—through public or private speech or conduct—***participated*** in, or furthered, the discourse that makes an issue one of public interest." *FilmOn.com Inc.*, 7 Cal. 5th at 151 (emphasis added).

Through each of the alleged defamatory statements, Defendants participated in the public discourse regarding Mittal's actions and role on the Board. The April 22 *Semafor* article informed the public that Unilever had launched an audit into the Foundation's finances "with a focus" on donations to Mittal's OI. FAC ¶ 31; Ex. A. The November 2025 SEC Form 20-F Registration Statement and December 2025 Prospectus informed TMICC's current and potential shareholders that the results of the investigations led TMICC to its "opinion [that Mittal] no longer meets the criteria to serve as a member of the Ben & Jerry's Board." FAC ¶¶ 62-66; Exs. E, G to FAC. And the December 2025 news articles informed the public that Mittal had exited the Board and about TMICC's opinions on that development. FAC ¶¶ 75-75; Exs. I-L to FAC.

The October 23 Letter and its dissemination (especially by Mittal herself) are no different. Mittal argues that "[a]ll such communications were confidential and internal" and thus fall outside the anti-SLAPP statute. Opp. 7. That is not the law. The California Supreme Court has not only refused to bar private communications from anti-SLAPP protection, *Navellier v. Sletten*, 29 Cal. 4th 82, 91 (2002) ("we have declined to hold that section 425.16 does not apply to events that transpire between private individuals"), the Court has affirmatively held that § 425.16 protects private conversations. *FilmOn.com Inc.*, 7 Cal. 5th at 146; *id.* at 151 ("we examine whether a defendant—through public ***or private speech or conduct***—participated in, or furthered, the discourse that makes an issue one of public interest") (emphasis added).

The October 23 Letter contributed to the debate about Mittal and her obligations to protect Ben & Jerry's social mission. It summarized the BI investigation, which led TMICC to reach its opinions on Mittal—that she "no longer meets the criteria to serve," "was no longer eligible to serve on the board," and engaged in "conflicts of interest." FAC ¶ 47 (October 23 Letter "disclosed the findings of Skadden's 'investigation'"); *id.* ¶¶ 63, 66, 75.

The October 23 Letter also reported that Mittal had been on both sides of a decade's worth of transactions with OI, circumvented company policies by making donations to partisan

organizations, and disrupted Ben & Jerry's operations. *See* Ex. C to FAC. All of that undergirded TMICC's statements of opinion in the November 2025 SEC Form 20-F, December 2025 Prospectus, and December 2025 news articles. In the same way that TMICC's public statements informed the public on its views about Mittal, the October 23 Letter informed the B&J's Board of the BI investigation's findings, asking them to take action. *See Industrial Waste & Debris Box Service, Inc. v. Murphy*, 4 Cal. App. 5th 1135, 1143-44, 1148-49 (2016) (company report found that plaintiff waste hauler had misreported recycling rates was protected speech in furtherance of a public issue because it "shed light on" "whether and to what degree waste hauling companies were meeting government standards" and led the sanitation board to alter its contracts and policies).

Mittal's reliance on the facts of *FilmOn* does not save her. There, confidential business reports that the defendant shared privately with its clients characterized the plaintiff's movies as "Adult Content" and "Copyright Infringement." *FilmOn.com Inc.*, 7 Cal. 5th at 141, 152-53. The mere fact that defendant characterized plaintiff's content as such did nothing to "contribu[te] to, or participat[e] in, the public discussion" on copyright and adult content. *Id*. at 153-54. Here, however, the matters set forth in October 23 Letter described Mittal's conduct, including as to the company's social mission, and spurred the other Class I directors to meet, interview Mittal, and determine whether they needed to remove her. *See* FAC ¶¶ 47 & 54-58.

As a fallback, Mittal argues that the Court lacks power to strike individual statements from the FAC as long as any one of the alleged statements survives scrutiny, Opp. 1 & 9-10, and cites a passage from *Pechkis v. Trustees of California State University*, 119 Cal. App. 5th 497, 508 (2026), the second part of which makes the case inapposite: "[W]e will not independently perform surgery on plaintiff's causes of action ***when defendant has wholly failed to 'propose where to make the incisions***.'" (emphasis added.) Here, Defendants have identified exactly where the Court should "make the incisions." *See* Mot. 10-11.

And the law is clear: Even if Mittal's claims arise from a mix of protected and unprotected activity, the Court ***is*** empowered to "perform surgery" on her complaint. "Courts may rule on plaintiffs' specific claims of protected activity, rather than reward artful pleading by ignoring such claims if they are mixed with assertions of unprotected activity." *Baral v. Schnitt*, 1 Cal. 5th 376,

393 (2016). "It is arbitrary to hold that the same claim, supported by allegations of protected and unprotected activity in a single cause of action, escapes review if the plaintiff shows a probability of prevailing on the allegations that are *not* covered by the anti-SLAPP statute." *Id.* at 376 (emphasis in original). Each of Mittal's contrary cases (Opp. 1) predates *Baral*.

The Court can also dismiss Mittal's claims under Rule 12(b)(6) on the same grounds that Defendants have raised under anti-SLAPP Step Two. *See* Mot. 12-24; *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022) (Step Two of anti-SLAPP motion and Rule 12(b)(6) are "analyzed under the same standard"). Federal courts are similarly empowered under Rule 12(b)(6) to "perform surgery" on elements of claims that fail as a matter of law. *Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 978-80, 985 (9th Cir. 2002) (dismissing under Rule 12(b)(6) some but not all defamatory statements from single defamation claim); *Bailey v. Enloe Med. Ctr.*, 2024 WL 3540331, at *1 (E.D. Cal. July 24, 2024) (dismissing under Rule 12(b)(6) some statements from single defamation claim).

## III. MITTAL HAS NOT SATISFIED HER BURDEN AT ANTI-SLAPP STEP TWO

At Step Two of an anti-SLAPP motion, the plaintiff bears the burden of showing that her claim has legal merit. *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 974 (N.D. Cal. 2019) (Orrick, J). Mittal has failed to and cannot meet her burden.

### A. Mittal Has Failed To Demonstrate That The *Semafor* Article Is Actionable.

The existence of a "statement" by the defendant is the first prima facie element of a claim for defamation. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1236 (N.D. Cal. 2014) (Orrick, J.). Mittal concedes that the "Semafor article included no public statement by Defendants at all." Opp. 8. On that basis alone, the Court can strike the *Semafor* statement as a basis for liability. That also compels dismissal of Unilever, as the *Semafor* article is the only publication attributed to Unilever. *See* FAC ¶ 31; *Carafano v. Metrosplash.com Inc.*, 207 F. Supp. 2d 1055, 1075 (C.D. Cal. 2002) ("only one who publishes can be subject to [a defamation claim].").

Mittal nonetheless argues that the *Semafor* article is defamatory by implication because "Unilever had discovered improper funding of the Oakland Institute by BNJF when Ms. Mittal was on both sides of the transactions[.]" Opp. 17-18. But the FAC pleads no defamation by

implication claim. Nor could it because the "gist" of the implication is substantially true. *Issa v. Applegate,* 31 Cal. App. 5th 689, 707 (2019). That is the case "so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark." *Id*. at 708.

The *Semafor* article truthfully states that Unilever "prob[ed]" the finances of the Foundation with an audit; that Mittal is "a salaried employee and founder of the Oakland Institute;" and the Oakland Institute "received more than $200,000 from the foundation since 2016, according to tax filings." FAC ¶ 31; Ex. A. Mittal does not dispute these facts. Indeed, she pleaded them herself. FAC ¶¶ 10, 29-41. And the Foundation's tax filings confirm the "more than $200,000" figure. RJN Exs. 14-27. When a "statement is true," it "cannot maintain an allegation for defamation by implication." *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1099 (S.D. Cal. 2021); *Smith v. Maldonado*, 72 Cal. App. 4th 637, 650 (1999) ("Because, by definition, an accurate and unambiguous statement of true facts cannot under any circumstances convey a defamatory meaning, no innuendo can make such a statement defamatory *as a matter of law.*").

When an officer or director sits on both sides of a transaction between two separate entities that she oversees, an apparent conflict of interest exists. *See Donovan v. Mazzola*, 716 F.2d 1226, 1236 (9th Cir. 1983) (affirming finding that "[a] conflict of interest exists because these same people are on both sides of the transaction as borrower and lender"); *Anderson v. Strauss Neibauer & Anderson APC Profit Sharing 401(k) Plan*, 2010 WL 5059652, at *8 (E.D. Cal. Dec. 6, 2010) (conflict of interest exists where employer funds benefit plan and evaluates and pays claims).

Mittal contends that "substantial truth is generally considered a fact question not resolvable on the pleadings." Opp. 19. But substantial truth can be decided on an anti-SLAPP motion. *See Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1029 (C.D. Cal. 2022) (granting defamation anti-SLAPP motion on grounds of truth); *Issa*, 31 Cal. App. 5th at 707 (same); *Gallagher*, 563 F. Supp. 3d at 1094-95, 1098-99 (same); *Avid Life Media, Inc. v. Infostream Grp., Inc.*, 2013 WL 6002167, at *7-8 (C.D. Cal. Nov. 12, 2013) (same).

**B. <u>Mittal Has Failed To Demonstrate That The October 23 Letter Is Actionable.</u>**

The October 23 Letter includes statements of fact that are true and statements of opinion—neither of which is actionable. Mot. 14-18. Factually, the October 23 Letter states that Mittal:

(1) drew $1.3 million in compensation from OI, including $249,000 for "rent," at the same time OI received "at least $345,600" from Foundation grants and "at least $488,125" from other organizations to which the Foundation donated, (2) "allowed the disclosure of confidential business information," (3) "circumvented" Unilever polices by "diverting" Foundation funds to partisan organizations Unilever previously barred, (4) "failed to cooperate in the [Business Integrity] Investigation and the Foundation audit," (5) "initiated a business integrity complaint to further her own personal interests," and (6) "created a toxic working environment." Ex. C at 2-3.

As to these alleged statements of fact, Mittal failed to meet her burden. At the pleading stage "a plaintiff must deny the 'substance' of the charge" *CoreCivic, Inc.*, 46 F.4th at 1144, and plead "the true facts to which the statement would have to be compared in order to establish its substantial falsity." *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1022 (2005). The FAC, however, neither denies the substance of the October 23 Letter's factual statements nor offers allegedly "true" facts to dispute them. Mittal merely argues that she denied them in her pleading. Opp. 15 (citing FAC ¶¶ 48, 81, 83-105). As explained in the Motion, no such "denials" are present in the FAC or they amount to "negative pregnants" that fail as a matter of law. Mot. 14-16; *see Vogel*, 127 Cal. App. 4th at 1021 (negative pregnant is "a denial of the literal truth of the total statement, but not of its substance" and insufficient to satisfy plaintiff's Step Two burden).

Mittal's citation to *Bently Reserve LP v. Papaliolios*, 218 Cal. App. 4th 418 (2013) and *Hawran v. Hixson*, 209 Cal. App. 4th 256 (2012), does not help. Both cases arose from state court anti-SLAPP motions where the plaintiffs supplemented their complaints with declarations that disputed the factual bases of the allegedly defamatory statements to show that the statements were provably false. *Bently Reserve LP*, 218 Cal. App. 4th at 424, 435; *Hawran*, 209 Cal. App. 4th at 264. Here, however, unlike anti-SLAPP motions in California state court, the Step Two analysis is based on the pleading itself. *CoreCivic, Inc.*, 46 F.4th at 1143. If filed in this Court, the complaints in *Bently Reserve* and *Hawran* would have failed Step Two.

But the venue makes no difference. Mittal cannot amend her pleading to add such allegations. Consistent with Rule 11, she does not and cannot dispute that: (a) she received a substantial salary from OI at the same time she was Chair of the Board that awarded funding to the

Foundation, a trustee of the Foundation and the Executive Director of OI which received funds from the Foundation; (b) she received the amounts set forth in the October 23 Letter; (c) she circumvented Ben & Jerry's social mission policy and an arbitrator's decision by making grants to barred partisan organizations; (d) she disclosed confidential company information; and (e) she initiated a retaliatory business integrity investigation against the company's attorneys. Further, her attempt to "dispute" the toxic work environment charge is laughable and mounts to merely claiming that some people liked here. Opp. 16.

As to the October 23 Letter's opinions, Mittal has also failed to meet her burden. Its statements that Mittal "engaged in 'self-dealing,' 'conflicts of interest,' 'breaches of fiduciary duties,' and 'improperly benefited from Ben & Jerry's funds,'" Ex. C, are classic statements of inactionable opinion. *See* Mot. at 18; *e.g., Hogan v. Weymouth*, 2019 WL 11055032, at *4 (C.D. Cal. Aug. 19, 2019) (statement that plaintiff was "unprofessional, insensitive, and aggressive" is inactionable opinion); *Kiehn v. Stein*, 2013 WL 1789718, at *3 (N.D. Cal. Apr. 26, 2013) (dismissing defamation claim on grounds that one business executive calling the other executive "'extremely inappropriate and unprofessional' are expressions of opinion, and thus not actionable")); *Savage v. Pac. Gas & Elec. Co.,* 21 Cal. App. 4th 434, 445 (1993) (statement that plaintiff had "conflict of interest" was matter of opinion and "does not imply an objective fact that can be proved to be true or false.").

Mittal has no real response. She failed to address any of these cases. And she comingled the parts of the October 23 Letter that assert matters of fact that are undeniably true, with parts that constitute inactionable opinions. And then Mittal argues that none of the Letter's statements are "'loose, figurative' epithets" but instead are instead assertions of fact. Opp. 16. Simply calling a statement of opinion a statement of fact does not make it so.

Mittal also cites *Balla v. Hall*, 59 Cal. App. 5th 652 (2021) (Opp. 16-17) and argues that *Balla* rejected a case cited in the Motion, *Savage v. Pacific Gas & Electric Co.*, 21 Cal. App. 4th 434 (1993). Mot. 18. *Balla* did no such thing, and it is not even on point. *Balla* held that a defendant could not escape liability for false accusations of specific bad acts by pointing to his ***separate*** statements of opinion that such conduct amounted to a "conflict of interest"; the court did

not hold that an accusation of a "conflict of interest" is not an opinion. 59 Cal. App. 5th at 681. It held only that the protection for statements of opinion did not extend to false statements of fact. It contrasted that situation with the facts at issue in *Savage*. There, "the gist of the statement [about the plaintiff] ***was*** the conflict of interest claim." *Balla*, 59 Cal. App. 5th at 681 (citing *Savage*, 21 Cal. App. 4th at 444-45) (rejecting defamation claim over assertion of "conflict of interest" as a matter of law on grounds of opinion) (emphasis in original).

As noted in the Motion, in *Charney v. Standard Gen., L.P.*, 10 Cal. App. 5th 149, 158 (2017), the Court held that a company's press release about the termination of its CEO "based on the results" of an investigation was inactionable opinion. Mot. 17-18. To distinguish the case, Mittal contends that the October 23 Letter is "the polar opposite" of *Charney* because "it does not withhold reasons, it enumerates them." Opp. 15. Of course the October 23 Letter "enumerates" what the investigation uncovered and TMICC's opinions about Mittal. That does not make them any less matters of opinion. *Charney* held that statements that an employee had engaged in "improper" conduct are matters of opinion. 10 Cal. App 5th at 158 & n.10. As noted above, many other courts have reached the same conclusion.

**C. <u>Mittal Has Failed To Demonstrate That The November SEC Form 20-F and December Prospectus Statements Are Actionable.</u>**

TMICC's November 2025 SEC Form 20-F and December 2025 Prospectus said: "following investigations commissioned by [TMICC] and conducted by external advisors, in the opinion of [TMICC] the current chair of the Ben & Jerry's Board no longer meets the criteria to serve as a member of the Ben & Jerry's Board." FAC ¶¶ 62-66; Exs. E-F. As explained in the Motion and the cited cases, these are classic statements of inactionable opinion. Mot. 21-22.

Mittal argues that these opinions lost their status as inactionable because, by referring to the investigation, they imply the existence of false statements of fact about her, *i.e.,* statements of fact in the October 23 Letter. Opp. 11-14 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990)). The rule is that an opinion is actionable "only if it could reasonably be understood as declaring or implying actual facts capable of being proved true or false." *Ruiz v. Harbor View Community Assn.*, 134 Cal. App. 4th 1456, 1471 (2005) (citations omitted). But as noted above in

Section B, the October 23 Letter's statements about Mittal's receipt of money, disclosure of confidential business information, circumvention of policy by donating funds to barred partisan organizations, failing to cooperate in the Investigation and audit, if viewed as statements of fact only, are undeniably true. *See, e.g.,* FAC Ex. C at 2-3 & RJN Exs. 1-27. The rest of the Letter's content are matters of opinion and inactionable. Even if they were not, Mittal, not Defendants, disclosed the content of the October 23 Letter to the public by attaching it as an exhibit to her complaint. Ex. C. Any harm to her reputation was self-inflicted.

Mittal rests her claim on *Hawran*. Opp. 12-13. But the factual differences between that case and this one render it inapposite. There, the plaintiff sued his former employer for statements it made in a press release and related SEC filings stating that, in the wake of an investigation that had found serious misconduct, the company had fired its senior officers and obtained plaintiff's resignation. It concluded: "While each of these officers and employees has denied wrongdoing, the special committee's investigation has raised serious concerns, resulting in a loss of confidence by the independent members of the company's board of directors in the personnel involved." 209 Cal. App. 4th at 264. Plaintiff sued for defamation and alleged that the statements were false. He alleged that he had agreed to resign in lieu of being implicated in the investigation. *Id*. The Court held that the statements were defamatory. Given the company's promise to exclude him from the investigation, the statement that the investigation found him to have committed wrongdoing was provably false. *Id*. at 293. He should not have been mentioned in the press release or lumped in with those who were investigated. *Id.* The Court rejected the company's argument that these were statements of opinion. It held that they were instead "statements of matters that can be proven or disproven concerning [the company]'s business decisions and the consequences of the [] investigation." *Id.* at 292. The company either had or had not promised to refrain from mentioning plaintiff in its public statements; the investigation either had or had not expressed any views about the plaintiff; and the plaintiff either had or had not "denied wrongdoing."

The facts of *Hawran* bear no meaningful similarity to what TMICC said in its Prospectus and SEC filing. Mittal cannot deny that she was a subject of investigations. The remaining statement, that the TMICC board held "the opinion [that] the current chair of the Ben & Jerry's

Board no longer meets the criteria to serve as a member of the Ben & Jerry's Board," is not provably true or false; it is opinion. *Charney*, 10 Cal. App. 5th at 158-59 (company's public statement that it fired the CEO based on the results of an investigation is inactionable opinion).

Mittal asks the Court to ignore *Charney*'s holding that statements that an executive engaged in "improper" conduct are inactionable opinion. She notes that *Charney* cited *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596 (1976), for the principle that statements of opinion were protected. Based on that, Mittal asserts that, because the U.S. Supreme Court adopted the principle in *Milkovich* that opinions could be actionable if they implied the existence of undisclosed and defamatory facts, *Gregory* and any case that cites it are not good law. Opp. 11.

Mittal's argument does not withstand analysis. In *Gregory*, the California Supreme Court held that an employer's statements that union leaders were "not performing their duties competently and not considering the best interests of the union membership" were opinions. 17 Cal. 3d at 604. *Milkovich* could not have undermined that because nothing in those statements implies anything else. *Charney* cited *Gregory* for the rule that similar statements in a company's press release are inactionable opinions. *Charney*, 10 Cal. App. 5th at 158 & n.10. Notably, Mittal's most important case on this issue, *Hawran*, likewise cites *Gregory* regarding the standard for what constitutes a statement of opinion. *Hawran*, 209 Cal. App. 4th at 291 (citing *Gregory* to reject defendants' arguments that press statements were inactionable opinion because they were "not phrased in terms of apparency, cautiously or otherwise"). That two California Court of Appeal opinions, issued more than 20 years after *Milkovich*, continue to rely on *Gregory* for these principles, confirms that Mittal's argument that *Milkovich* somehow undermined *Gregory* on these principles is wrong.

**D. <u>The December 2025 News Articles Are Inactionable.</u>**

Included in the FAC are four December 2025 news articles from the *Financial Times*, *BBC*, and *CNBC* that report on Mittal's disputes with TMICC and her loss of eligibility to continue to serve on the Board. FAC ¶¶ 75-78. The Motion explained that the December 2025 news articles contained TMICC's inactionable opinions regarding Mittal's exit from the Board, namely, that Mittal engaged in "conflicts of interest" and "no longer meets the criteria to serve as a

member of the board following 'internal investigations;'" and that TMICC wished to "safeguard," "preserve and enhance" its "social mission" and "essential integrity." Mot. 22-23.

Mittal argues that such opinions are actionable because they "impl[y] omitted facts," *i.e.* the BI investigation's findings, "which may lead to a defamatory conclusion." Opp. 18. But an opinion loses its protection only where it implies the existence of ***false*** statements of fact. *See Ruiz*, 134 Cal. App. 4th at 1471. These opinions were based on undeniably true facts about OI's and Mittal's finances and the other results of the investigation.

While not denying the findings of the investigation, Mittal argues that Defendants cannot rely on the investigation because, in her view, it was "pretextual." While there is no reason to credit her characterization, given that she does not and cannot deny the findings, even accepting that allegation as true for this motion, a company's statements about a terminated director after an investigation into that director's conduct are inactionable statements of opinion, even where the director claims the investigation was unfair. *See Charney*, 10 Cal. App. 5th at 158 n.10.

Mittal cites *Freeman v. Wells Fargo & Co.*, 2023 WL 4828678 (N.D. Cal. July 26, 2023), to support her argument that, by saying that her ineligibility for board service was related to "safeguarding" Ben & Jerry's "integrity," Defendants' statements in the December articles conveyed a "defamatory impression" that her removal was due to misconduct. Opp. 18. But most statements of opinion convey a negative "impression." If that caused opinions to lose their protection, there would be no protection for opinions.

Mittal's alternative argument is that the December 2025 news articles are statements of fact because it is "provably false" that "Defendants' investigations found Ms. Mittal to have committed misconduct" because they "'uncovered' no 'wrongdoing, ethical malpractice, or violation.'" Opp. 18-20. But that conflicts with her allegations and exhibits: The BI investigation ***did*** uncover Mittal's wrongdoing and violations. FAC ¶ 72; *see* Ex. C. Nor are the December 2025 news articles "formalized statements" by the Defendants like the *Hawran* press release: Whereas the *Hawran* defendants disclosed the investigation's factual findings to the public, TMICC never shared the BI investigation's results with the public and shared only its ultimate opinions. Opp. 19; *Hawran*, 209 Cal. App. 4th at 292.

**E. <u>Mittal Has Failed To Demonstrate Actual Malice.</u>**

Mittal must plausibly allege that Defendants made the defamatory statements with actual malice. She ignores that actual malice requires the plaintiff to identify the speaker's identity and bars statements that are either true or opinion. Mot. 13-23. Instead, Mittal identifies purported "circumstantial evidence pointing to inferences of actual malice." Opp. 20-23. It does not.

Mittal contends first that Defendants made a "purposeful avoidance of the truth" because they purportedly "failed to make any effort to interview" her for the BI investigation. Opp. 21-22 (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989)). That is wrong. Defendants made multiple attempts to interview her; she repeatedly refused and insisted on getting any questions in writing to permit her to answer them with her lawyer's help. Ex. C at 5.

Mittal next argues that Defendants' opinions relied on "biased sources," specifically Skadden. Opp. 20. She cites *Mitchell v. Twin Galaxies LLC*, 70 Cal. App. 5th 207 (2021). But there, the evidence of malice included the investigator having "publicly expressed [its] conclusion that Mitchell was guilty before the investigation began." *Id.* at 223. Here there are no comparable allegations that Skadden made any public statements about Mittal or the BI investigation, or broadcasted a preordained conclusion that she was "guilty."

Unlike *Overstock.com v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 713 (2007) (Opp. 20), Mittal does not dispute the BI investigation's conclusions or offer supposedly "true" facts to which they can be compared. *See Vogel*, 127 Cal. App. 4th at 1022. The "point-by-point letter" she hails as offering those facts consists of the same negative pregnants and evasions as the FAC. Opp. 23; *see* Ex. D at 15 (denying receipt of "rent" from OI because the payments were "below market"); *id.* at 17 (denying toxic work environment charge by blaming Unilever for not identifying the individual who reported an "instance" or "remark").

Mittal points to a *Washington Beacon* article in which an unnamed Unilever executive reportedly denounced "the very same allegations of self-dealing" at issue in the BI investigation. Opp. 21. But a years old statement in the media from an unnamed source based on unknown facts is not chargeable to Unilever or a basis to allege actual malice. *Resolute Forest Prods., Inc. v. Greenpeace Int'l.*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (to allege malice over an

organization's public statements, plaintiff must identify the person responsible and allege how that person acted with malice; granting anti-SLAPP and Rule 12(b)(6) motion). Further, the article reported only on the Foundation and OI's tax filings and confirmed that the amounts OI received through 2019 were correct. Opp. 21.

Mittal argues that Defendants' "anger and hostility" toward her establishes malice. Opp. 20. But "a court may consider a defendant's anger or hostility toward a plaintiff in determining the presence of malice only to the extent it impacts the defendant's *actual belief* concerning the truthfulness of the publication." *Hicks v. Richard*, 39 Cal. App. 5th 1167, 1178 (2019). Regardless of Defendants' feelings towards Mittal, the underlying statements are not actionable because they are either true or opinions based on well-established California law.

Finally, Mittal claims that Defendants' purported offer to have her run a new "multi-million dollar charitable organization" "pleads the common-sense inference" that Defendants did not believe "their accusations of serious misconduct." Opp. 23. No, the offer reflects only that Defendants did not want her to be making contributions to partisan organizations in their name. Regardless, Mittal recognizes this offer occurred at a settlement conference. FAC ¶¶ 43-44. Her disclosure of those communications violates Federal Rule of Evidence 408 and cannot establish liability as a matter of law. *See* FRE 408 (settlement offers inadmissible to prove disputed claim).

**F. Mittal Has Failed To Show That Her Two Other Claims Have Merit.**

Mittal agrees that her false light claim rises and falls with her defamation claim. Opp. 23. As shown above, the defamation claim fails. Her IIED claim is no different. *See Lieberman v. Fieger*, 338 F.3d 1076, 1082 n.3 (9th Cir. 2003) (plaintiff may not maintain IIED claim "based on the same acts which were insufficient to support a cause of action for defamation").

Mittal argues that she has an independent basis to assert her IIED claim in that Defendants engaged in "extreme and outrageous" behavior by launching the "pretextual" E&Y Audit and BI investigation into her conduct and then declaring her ineligible to serve on the Board. Opp. 23-24. She is wrong. "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of

emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Elecs.,* 46 Cal. App. 4th 55, 80 (1996). Such "managing" actions include "***hiring and firing***, job or project assignments, office or work station assignments, promotion or demotion, [and] ***performance evaluations***[.]" *Id.* (emphasis added); *see Jackson v. Metal Improvement Co.*, 2012 WL 8968996, at *8 (C.D. Cal. Nov. 26, 2012) (citing *Janken* and barring IIED claim based on firing and racial epithet); *Sustrick v. CI Cap. Partners LLC*, 2025 WL 1626175, at *3 (N.D. Cal. May 5, 2025) ("Claims of IIED based on employment-based conduct often falls short of this standard; for example, firing an employee by itself does not constitute 'outrageous' conduct, even if the firing was without cause") (quoting *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984)) (wrongful discharge or being fired on a pretext does not constitute IIED); *see also Payne v. D.C.*, 773 F. Supp. 2d 89, 102 (D.D.C. 2011) (dismissing IIED claim based on allegation that defendant employers launched criminal investigation to "destroy [plaintiff's] reputation").

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion.

Dated: September 23, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Steven G. Madison
Robert M. Schwartz
Marie M. Hayrapetian
Julian T. Schoen

By: *_/s/ Robert M. Schwartz*
Robert M. Schwartz
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FRCP 5(b) on this the 23rd day of September 2026.

Dated: September 23, 2026

By: ______/s/ Julian Schoen_____
Julian Schoen
*Attorneys for Defendants*