UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANURADHA MITTAL,
Plaintiff,

v.

UNILEVER PLC, et al.,
Defendants.

Case No. 26-cv-02660-WHO

**ORDER GRANTING MOTION TO TRANSFER, DENYING REMAINING MOTIONS AS MOOT**

Re: Dkt. Nos. 50, 52, 53

Plaintiff Anuradha Mittal, a former director and board chair on Ben & Jerry's Independent Board ("Board"), alleges that defendants Unilever PLC, the Magnum Ice Cream Company, and Jochanan Senf made multiple defamatory statements about her. These statements regarded supposed conflicts of interest and breaches of fiduciary duties by Ms. Mittal in her role as a Director and as a trustee of the Ben & Jerry's Foundation with respect to monies received by the Oakland Institute, a non-profit founded and directed by Mittal. Their alleged purpose was to either force Mittal to resign from her position on the Board and Foundation or to manufacture cover for defendants' successful efforts to remove Mittal from the Board. As a result, Mittal alleges claims under California law for defamation, false light, and intentional infliction of emotional distress. *See generally* Amended Complaint ("AC," Dkt. No. 24).

Defendants move to transfer this case to the Southern District of New York. Their motion is based on the forum-selection clauses in two agreements that they say bind Mittal. The first agreement is the 2000 Merger Agreement through which: (i) Unilever acquired Ben & Jerry's; (ii) a special purpose board of directors comprised of a majority of Class I directors was created; and (iii) Unilever set up and funded the Ben & Jerry's Foundation. *See* Request for Judicial Notice ("RJN"), Ex. 30 ("2000 Merger Agreement"), p. 65 § 9.10; AC ¶ 1. Mittal describes that, "[t]he Independent Board was created when Unilever acquired Ben & Jerry's Homemade, Inc. [] in

United States District Court
Northern District of California

2000; a key term of the Merger Agreement was the creation of an Independent Board with legally binding authority over Ben & Jerry's social mission and brand integrity." AC ¶ 1; *see also id.* ¶¶ 17, 19-23 (describing duties of the Board outlined in the 2000 Merger Agreement and Unilever's threats and acts against the Board, during the time Mittal was Chair, in light of the Board's proposed or disclosed statements about the conflict in Gaza and peace).

The second agreement for which the defendants invoke the forum selection clause is a 2022 Settlement Agreement. *See* RJN, Ex. 29 (2022 Settlement Agreement), § 14. The 2022 Settlement Agreement was signed by Mittal as a then-Class I Director. It settled claims filed by the Board "to enforce its contractual rights under the Merger Agreement" following Unilever's attempts to prevent the Board from publicly speaking out "in support of peace and human rights." AC ¶ 23. The 2022 Settlement Agreement required: (i) that Unilever would agree to "[r]espect and acknowledge the Ben & Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity and agree to work in good faith with the Independent Board to ensure that both are protected and furthered," and that Mittal (as the Chair) would "in good faith consultation with Unilever will determine to which humanitarian and human rights organizations the funds will be disbursed"; (ii) that Unilever would reaffirm its commitment to the Sections 6.14(e), (f) of the Merger Agreement, that "any decisions implicating Ben & Jerry's Essential Brand Integrity and Social Mission should be made after consultation with and approval of the Independent Board"; (iii) "Respect and adherence to the Merger Agreement and a respectful work relationship with the Independent Board" would be maintained; and (iv) Unilever would "[r]efrain from making any statement on behalf of Ben & Jerry's regarding the Social Mission that is inconsistent with the Social Mission of Ben & Jerry's as previously stated by Ben & Jerry's or approved by the Independent Board, without the consent of a majority of the Independent Board." 2022 Settlement Agreement, §§ 2(b), (f) – (j).

Both sides agree that there is a case pending in the Southern District of New York, filed while Mittal was still a Class I Director, that implicates both the 2000 Merger Agreement and the 2022 Settlement Agreement. AC ¶ 23; *Ben & Jerry's Homemade, Inc. v. Unilever PLC*, No. 24-CV-08641 (PKC), 2026 WL 2453722 (S.D.N.Y. Aug. 21, 2026) ("SDNY case"). The factual



United States District Court
Northern District of California

United States District Court
Northern District of California

allegations in the SDNY case overlap with many of the allegations in this case, including that: (i) the Board was targeted due to its support of a Gaza ceasefire and efforts for peace; (ii) Mittal was targeted by Unilever through the audit of the Foundation in violation of the independence provisions guaranteed by the Merger Agreement; (iii) Mittal was targeted for a Business Integrity investigation, also in violation of the independence provisions guaranteed by the Merger Agreement; and (iv) Mittal was threatened in a meeting in San Francisco to either resign as an Class I Director or face further accusations in an upcoming prospectus. *See Ben & Jerry's Homemade, Inc. v. Unilever PLC*, 2026 WL 2453722 at *3-4.

After the most recent motion to dismiss in the SDNY case, the remaining claims are: (i) improper removal of, or the imposition of new eligibility requirements on, the Class I Directors . . . in violation of section 6.14(a) of the Merger Agreement; and (ii) that "Unilever and Magnum breached the Settlement Agreement resolving the dispute over Unilever's sale of Ben & Jerry's trademark rights in Israel by interfering with the Board's authority and failing to make a required payment" and by failing to make payments to purchase "Palestinian almonds" for at least ten years and failure to provide confirmation of such payments. *Id.* at *10, 13.

The test in the Ninth Circuit of when a forum selection clause that uses broad "relates to" language covers a subsequent dispute – as both agreements here use –is whether the dispute "has some logical or causal connection to the parties' agreement." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018), holding modified by *Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023). Mittal argues primarily that none of her claims in this case – defamation, false light, and intentional infliction of emotional distress – require interpretation of either the 2000 Merger Agreement or the 2022 Settlement Agreement. But the factual allegations in this case (regarding the statements Unilever and the other defendants made about Mittal's role on the Board, defendants' inception of and statements regarding the findings of the Audit and the Business Integrity reviews of Mittal's Board and Foundation activities, and the threats allegedly made at the meeting in San Francisco) are likewise at the heart of the SDNY case.

This action logically relates to both the 2000 Merger Agreement and the 2022 Settlement Agreement. The resolution of Mittal's defamation claims in this case will depend on whether, as

Mittal alleges, the Audit and Business Integrity investigations were sham investigations undertaken only to force Mittal from the Board and whether Mittal is correct that no improper conduct was found. Those issues are directly relevant to Mittal's ability to show whether defendants' statements were false statements of fact or non-actionable opinion, and whether malice can be shown. Whether those investigations and their purported conclusions were legitimate exercises of defendants' rights implicates the 2000 Merger Agreement. And whether those investigations and their purported conclusions were legitimate or were instead attempts to interfere with the independence of the Board also implicates the 2022 Settlement Agreement.[1] The "relates to" standard is satisfied.

Mittal contends that she cannot be bound by the 2000 Merger Agreement because she did not sign it and equitable estoppel does not apply. Oppo. Mot. to Transfer at 3-4. Yet, as the case Mittal relies on recognizes, "nonsignatories have been held to arbitration clauses where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir.2001)). Mittal sued Unilever under the 2000 Merger Agreement, acting in her capacity as a Class I Director, in the pending SDNY case. While the SDNY case seeks to vindicate the rights of the Independent Board, and this case seeks to vindicate Mittal's personal tort claims, both cases concern whether defendants took acts in violation of the 2000 Merger Agreement by attempting to push Mittal and other Class I Directors out. In this somewhat unique circumstance, Mittal is bound by equitable estoppel to the 2000 Merger Agreement's forum selection clause as a beneficiary of the rights and protections provided to the Independent Board and Foundation in that Agreement. Those issues are directly at issue in the SDNY case and at least indirectly at issue in this action.

Because both forum selection clauses apply, Mittal cannot avoid transfer by arguing that

---

[1] This case, therefore, is unlike *In re Orange, S.A.*, 818 F.3d 956, 962 (9th Cir. 2016), where the nondisclosure agreement ("NDA") containing the forum selection clause was factually distinct from the subsequent computer hacking that gave rise to the claims. Not only would the NDA agreement not need to be interpreted, it would not even be referenced in the subsequent case.

New York is "'inconvenient or less convenient for [herself] or [her] witnesses, or for their pursuit of the litigation.'" *Yei A. Sun*, 901 F.3d at 1091 (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 66 (2013)). Instead, I may consider only factors "relating to the public interest" including court congestion, local interest, and determining the claims in a forum "at home with the law," recognizing that "those factors will rarely defeat a transfer motion." *Yei A. Sun*, 901 F.3d at 1088. Mittal does not address the public factors, but if she did, they would not defeat transfer, given that the Southern District of New York will ably be able to handle this case either in coordination with or separate from the already pending SDNY case.

Defendants' motion to transfer this action to the Southern District of New York is GRANTED. I do not reach and DENY as moot defendants' motion to dismiss for lack of personal jurisdiction and the special motion to strike. Dkt. Nos. 50, 52.

**IT IS SO ORDERED.**

Dated: November 6, 2026

William H. Orrick
United States District Judge